(77 South. 841)

## CITY OF BIRMINGHAM v. EDWARDS.
### (6 Div. 680.)

(Supreme Court of Alabama. Jan. 17, 1918.)

1. MUNICIPAL CORPORATIONS ⬤805(1)—DEFECTIVE SIDEWALKS—CONTRIBUTORY NEGLIGENCE.

Forgetfulness and inattention to a known defect in a sidewalk does not excuse negligence of a pedestrian.

2. MUNICIPAL CORPORATIONS ⬤817(3)—DEFECTIVE SIDEWALKS — KNOWN DEFECTS — PRESUMPTION.

Where plaintiff knew of the defect in the sidewalk, negligence in not remembering and avoiding the danger will be presumed, in the absence of testimony showing a satisfactory excuse for forgetting, placing the burden on her to excuse forgetfulness or inattention.

3. MUNICIPAL CORPORATIONS ⬤806(4) — KNOWN DEFECTS—FORGETFULNESS—EXCUSE.

Where plaintiff knew of the defect in a sidewalk and its attending danger, and her fall was due to her forgetfulness, that it was dark did not excuse her inattention.

4. MUNICIPAL CORPORATIONS ⬤822(5)—DEFECTIVE SIDEWALK—INSTRUCTIONS.

Where the evidence showed that plaintiff knew of the defect in the sidewalk, and that the accident was due to her forgetfulness, there being no evidence to show excuse for such forgetfulness, refusal to charge that if plaintiff's forgetfulness contributed to the injury she could not recover was reversible error, where the matter was not sufficiently covered by charge given.

5. EVIDENCE ⬤45 — JUDICIAL NOTICE — APPOINTMENT OF NOTARY.

Courts take judicial notice of the appointment by the chief executive of notaries.

6. NOTARIES ⬤2 — APPOINTMENT — REQUISITES.

Issuance of a commission is essential to the completeness of the appointment of a notary, in view of Code 1907, §§ 1469–1471, as to procuring commission before exercising duties of office.

7. EVIDENCE ⬤44—JUDICIAL NOTICE—EXPIRATION OF COMMISSION OF NOTARY.

The court judicially knows whether the commission of the notary who took plaintiff's affidavit had expired.

8. EVIDENCE ⬤44 — JUDICIAL NOTICE — DE FACTO OFFICER.

That the notary who took plaintiff's affidavit was a de facto officer was a matter of proof, as the rule that courts take judicial notice of commissioned officers has no application to de facto officers.

9. MUNICIPAL CORPORATIONS ⬤812(2)—ACTION FOR INJURIES—CONDITION PRECEDENT.

Under Gen. Acts 1915, p. 294, § 12, the filing with the city clerk or other officer corresponding thereto of a sworn claim for personal injuries due to a defective sidewalk is a condition precedent to the right to sue the city.

10. MUNICIPAL CORPORATIONS ⬤812(8) — CLAIM FOR INJURIES—ESSENTIALS.

The claim for injuries filed with the city clerk was not a sworn claim within Gen. Acts 1915, p. 294, § 12, unless the notary who took plaintiff's oath was a de jure or de facto officer.

11. NEW TRIAL ⬤140(1) — SUPPLEMENTING PROOF.

Where the notary who took plaintiff's affidavit to a claim for injuries filed with defendant city was not a de jure officer, it was incumbent on plaintiff to prove at the trial that such notary was a de facto officer, within Code 1907, § 1473, and lack of such proof could not be supplemented on motion for new trial.

12. MUNICIPAL CORPORATIONS ⬤818(4)—INJURIES FROM DEFECTIVE SIDEWALK — EVIDENCE.

In suit for injuries due to defective walk, evidence that no complaint of defect had reached street department of city was properly excluded.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Suit by Mrs. Fannie Edwards against the City of Birmingham and others. Judgment for unnamed defendants and for plaintiff against the City, and the City appeals. Reversed and remanded.

Suit by appellee against the city of Birmingham (appellant here), Mrs. Mary Lovett, and A. J. Cates, for the recovery of damages for injuries sustained by the plaintiff (appellee) while passing along or over the sidewalk on what is known as Tuscaloosa avenue, between College and Jefferson streets, in that part of the city of Birmingham known as West End.

It is averred in the complaint that the plaintiff tripped and fell, or was caused to fall by reason and as a proximate consequence of a defect in the sidewalk at or near said point, which defect consisted in that the sidewalk was so constructed as to permit one part of the same to be about 6 inches higher than the part which immediately adjoined it, thereby forming an obstruction in said sidewalk similar to a step. The accident occurred on the evening of November 12, 1916, between 6 and 7 o'clock, at a time when it was "just good dark."

The defect in the paved sidewalk over which the plaintiff tripped and fell was caused by part of the sidewalk on said Tuscaloosa avenue being laid on one grade and the other part on a different grade, all of which is made to appear more clearly by the photographs which were offered in evidence, and are a part of the transcript. Tuscaloosa avenue runs east and west, and is a prominent thoroughfare. The sidewalk from the point where the plaintiff was injured to the corner, 150 feet west, was laid by the town of West End, which later, in the year 1910, became a part of "Greater Birmingham." The sidewalk from the point where the plaintiff was injured to the corner, some 100 feet east, was laid by the property

owners. The west 150 feet of the sidewalk was put down upon grades given by the town of West End; the east 100 feet was put down under such grades as the property owners selected; the difference in the two grades in the sidewalk making a "step-off," which was estimated by one witness to be of a depth of "three-fourths of an inch, running to as much as 2 inches," by another witness 3½ inches by measurement with his hand, and by still another witness as much as 6 inches. The place where the plaintiff was injured on Tuscaloosa avenue is known as the 500 block; Jefferson street being at one end and College street at the other.

Mr. Sid Norwood, who was mayor of the old town of West End for several terms, testified that he was familiar with this block on Tuscaloosa avenue and with the sidewalk pavement thereon. He further testified that "the pavement from Jefferson street coming east on Tuscaloosa avenue on the north side of the avenue was put down a good many years ago, and the grade, location, and width established with the approval of the city of West End. After the first section of pavement had been laid, that is, the part from Jefferson street coming east, the city of West End had that part of the pavement laid extending from Quinn's Drug store (on the corner of College street and Tuscaloosa avenue) west, and meeting the other pavement." That the town of West End established the grade of this last part of the pavement, and that the same was established as it is now laid. The town of West End did not require the other pavement to be relaid, but decided to allow it to remain as it was, and did not change the grade of the remaining part of the pavement, but permitted the same to remain as first established. The town of West End was afterwards merged into, and taken in by, the present city of Birmingham.

The evidence is without dispute that the place of the conjunction of these two pavements, where this obstruction exists, is on the line between the lots of defendants Lovett and Cates, and that at the time of the purchase of their respective lots the pavement was laid, and the sidewalk existed just as it did at the time of this accident; and that no complaint was made about the grade, either by the town of West End or the city of Birmingham.

The court gave, at the request of the defendants Lovett and Cates, the affirmative charge in their behalf.

The evidence further tended to show that the nearest arc light to this defect in the sidewalk was a half block away, at the corner of Jefferson street and Tuscaloosa avenue; that the sidewalk is cement, and therefore looks lighter than the ground; that, in November, when this accident occurred, the leaves were off the trees, but there are about four shade trees between the corner where Quinn's drug store is located and the point of this defect.

Plaintiff testified that she had been down to Quinn's drug store, and on her return to her home, when she reached this obstruction in the sidewalk, she fell completely to the ground, her right knee striking against the edge of the pavement, and she thereby sustained the painful injuries complained of, and was confined to her bed for quite a while. The evidence further tends to show that she has not yet fully recovered the normal use of her limb.

The following charges were refused to the defendant:

"(3) If the jury believe from the evidence that the plaintiff before the time when she was injured knew of the 'step-off' in the sidewalk, but on the evening she was injured through her own forgetfulness failed to use due care to avoid it, and that this forgetfulness on her part proximately contributed in the least degree to her injuries, she cannot recover," and "(5) If the plaintiff prior to the night on which she was injured knew of the condition of the sidewalk, and had before that time consciously avoided passing over it for fear of being injured, but on the night of her injuries forgot to avoid the place, and such forgetfulness contributed to her injuries, she cannot recover."

Plaintiff offered in evidence sworn statement of claim filed by her on January 24, 1917, with the clerk of the city of Birmingham; the same purporting to have been sworn to before Horace C. Wilkinson, a notary public, and had indorsed thereon the following:

"Received of Horace C. Wilkinson, attorney for Mrs. Fannie Edwards, a copy of the foregoing sworn claim, the original copy of which has been filed with me this the 24th day of January, 1917. C. B. Lloyd, Clerk of the City of Birmingham, Alabama."

The defendant objected to the introduction of said claim, and propounded questions tending to show that Wilkinson, who took the affidavit, was the attorney, and financially interested in the outcome of the case, and therefore incompetent to administer the oath; but the court sustained the objections of plaintiff to these questions. The defendant city of Birmingham again objected on the ground that the claim was not sworn to as required by law, and that the person who took the acknowledgment of the plaintiff was not competent and authorized to take her affidavit to said claim, and on the further ground that the person purported to have sworn the plaintiff to the affidavit was not authorized by law to administer the oath. The court overruled the objection, and the defendant reserved an exception.

During the main trial of the cause, no evidence was offered by the plaintiff in regard to the time when the notary public who took the affidavit was appointed, or when his term of office expired, or whether or not he had been in the discharge of the functions and duties of the office, and was a de facto officer; but, after the trial of the cause, and judgment rendered against the city, on motion for a new trial by the city, it appeared

that said notary public was not duly qualified as such officer, as required by law, at the time he took the affidavit; that his term of office expired in July, 1915. The court permitted proof, over the objection by the defendant, that he had from the time of the expiration of his commission in July, 1915, continuously exercised the functions and duties of the office, was in possession of the seal of office, and had taken numerous acknowledgments to deeds, interrogatories, and other documents as a notary public, and that shortly after the expiration of his commission, he was reappointed a notary by the present Governor, but that he seems to have neglected to have filed his bond and qualified as required by the statute. It appears that he had executed a bond with proper sureties, but for some reason had overlooked filing the new bond in the probate office, but that he was acting as a notary at the time he took this affidavit, and had been continuously since the expiration of his commission in July, 1915. The motion for a new trial was overruled.

It appears from the testimony of the plaintiff that she was 55 years of age, and resided on Tuscaloosa avenue, in that part of the city of Birmingham known as West End, at the time of her accident; there being two lots intervening between her residence and the place of this defect in the sidewalk. It further appears that she had been living at this place a month before her injury; that previous to removing to the residence she now occupied, she had lived just across the street from the place of this defect, and had been living in West End for about a year before the accident; that she lived across the street for a month or two, or until about April 1st, and then moved to No. 430 Tuscaloosa avenue. She had lived at 400 Tuscaloosa avenue, at the corner of Green street and Tuscaloosa avenue, several years ago, having lived there a year. She then moved to No. 518 Tuscaloosa avenue, which is in the same block with, but a little removed from, this defect or obstruction in the sidewalk. Quinn's drug store is No. 500 Tuscaloosa avenue, which drug store is conducted by her son-in-law. Plaintiff testified that she knew of this defect in the sidewalk; that she hardly ever went down that way; that was the first time she had ever been down to the drug store at night; that she had gone across this place in the day, but could not say how many times, "not often." She further testified that she did not suppose she had been to the drug store more than a half dozen times altogether, and that every time she took proper care to keep from getting hurt. Plaintiff also testified that:

"This picture presents the condition of that place at the time of the accident." "I knew it looked that way, but maybe I wasn't thinking about it at the time, and it was dark too. I knew how the place looked all right. * * * I was just going on home at the time I was hurt, and I knew that the place was there, but I don't think I thought about it right then, and I didn't know exactly where it was, and it was very dark and I couldn't see at all; and before I knew anything I had fallen."

The evidence further tended to show that the street had been in this condition for about 10 years. The city offered to show by some of its employés, who had employment in the street department, one a chief clerk to the street commissioner, and the other a secretary to the commissioner of public improvements, that no complaints had come to them by any one as to said condition of the street. The objection to these questions was sustained by the court.

There was verdict and judgment for the defendants Lovett and Cates, and judgment for the plaintiff against the city of Birmingham in the sum of $3,000. From which judgment the city prosecutes this appeal.

M. M. Ullman and W. A. Jenkins, both of Birmingham, for appellant. Horace Wilkinson, of Birmingham, for appellee.

GARDNER, J. Plaintiff (appellee) resided in the city of Birmingham at No. 518 Tuscaloosa avenue in November, 1916. Near her home there was a defect or obstruction in the pavement of the sidewalk caused by the fact that some years previously a portion of the pavement was laid by the property owners on a certain grade, and when subsequently the other portion of the street was paved, under the direction of the authorities of the municipality of West End, the former grade was permitted to stand, thus producing at the conjunction of these two pieces of pavement an obstruction in the nature of a step variously estimated by the witnesses from three-fourths to six inches in height.

There is nothing to indicate other than that plaintiff was in normal health and in the full enjoyment of her faculties. This defective condition in the sidewalk had so remained for a number of years, and the evidence of the plaintiff discloses that she was thoroughly familiar with its condition, and had been for some time prior to the accident. Indeed, she testified that she had on various occasions walked on the opposite side of the street to avoid it. On the evening of the accident she had been to Quinn's drug store, a short distance from her home, on the corner of Tuscaloosa avenue and College street; "that it was between 6 and 7 o'clock, and was just good dark." Upon her return home from the drug store she stepped off of this place and fell to the ground, striking her knee upon the edge of the pavement, resulting in the injuries complained of.

From the evidence, which appears in the statement of the case, the jury could infer that there was some light at this particular place, whereby pedestrians could see their way, and that plaintiff's fall was occasioned by her thoughtlessness, inattention, or momentary forgetfulness of the defect in the

sidewalk. Her testimony discloses that she was thoroughly familiar with the place, living near it, and had known of the condition for some time, but that (to use the language of the plaintiff) "maybe wasn't thinking about it at the time." She further testified that she was walking rapidly at the time, and did not realize that this was the place she had stepped off until after she had fallen to the ground.

Charges 3 and 5, refused to defendant, present the question of momentary forgetfulness on the part of the plaintiff, and failure to use due care to avoid the injuries, such forgetfulness as to proximately contribute to the injury so as to constitute contributory negligence and prevent a recovery. This is a question upon which there is some diversity of opinion, and has given rise to many decisions in various jurisdictions. To review them here would extend this opinion to undue length. There is an excellent collection of the authorities in a note to Lerner v. Philadelphia, 21 L. R. A. (N. S.) 644-652. See, also, 28 Cyc. 1422-1425.

The Supreme Court of Tennessee recently had this question for consideration in Mayor & Aldermen of City of Knoxville v. Cain, 128 Tenn. 250, 159 S. W. 1084, Ann. Cas. 1915B, 762, wherein, speaking to this question, the court said:

"He knew the danger, but did not keep it in mind. Was his forgetfulness an excuse? We agree that a citizen walking along a street does not have to keep his eyes on the pavement all the time; that he may presume the city has done its duty; that even when he knows it has not done its duty, and there is a defect of which he has knowledge, he does not have to keep the defect in mind at all times on peril of suffering injury without redress; that if his attention is called away by any cause adequate to effect that result, considering human nature in its ordinary aspects, and with regard to its ordinary susceptibilities, he may be excused, and that a jury must judge of the adequacy and reasonableness of such cause as related to the duty of ordinary care on the part of the citizen."

The opinion then proceeds to enumerate many illustrations whereby the jury could draw the conclusion that the failure on the part of the pedestrian to remember the defect was excused, such as the suddenly communicated news of the illness of a relative or friend; or the absorption of the mind on the condition of a sick relative or friend just visited or about to be visited; or even the hail of an acquaintance across the street, and many other illustrations not necessary to note. The opinion then proceeds:

"But we do not see how one can be excused who admits that there was nothing to divert his attention; that he simply forgot; that is, that he failed to pay attention to his going. Therefore, while it is true, as laid down in Knoxville v. Cox, that the mere fact of a temporary lapse of memory in presence of known danger is not always proof of negligence, yet we think this must be understood with the qualification above indicated; that is, that such lapse must be shown to have reasonable cause, one which is apart from mere inattention. The duty of every one in presence of a known danger is to give heed, and to walk with care, yet the law recognizes the truth that men are imperfect, that few have adequate command of their faculties, emotions, and propensities, and the power of steady attention, and that most are easily moved from the due balance of mental composure. So it is the exceptions we have mentioned, and others like them, are tolerated out of tenderness to the weakness of human nature. But we do not think we should go the length of holding that every lapse of memory is excusable. Such a rule would breed fraud, and put an end to the responsibility of plaintiffs for the exercise of due care, or at least render impossible the enforcement of it when interest prompts deception and weakness yields to it."

The Supreme Court of Wisconsin in discussing the same situation in Collins v. City of Jamesville, 111 Wis. 348, 87 N. W. 241, 1087, said:

"Some courts have held that if a person knows of a dangerous defect in a sidewalk he is bound at his peril to remember it. * * * But this court, in harmony with the weight of authority, holds to the more reasonable and humane rule that a person may forget the existence of a defect in a street or sidewalk and thereby receive a personal injury, and yet be in the exercise of ordinary care. Cuthbert v. Appleton, 24 Wis. 383; Wheeler v. Westport, 30 Wis. 392; Simonds v. Baraboo, 93 Wis. 40 [67 N. W. 40, 57 Am. St. Rep. 895]; Crites v. New Richmond, 98 Wis. 55 [73 N. W. 322]. An examination of those cases will show that the law is that if a person knows of a dangerous defect in a sidewalk and is injured thereby, it is presumed, in the absence of evidence to the contrary, that he remembered it and was negligent, but that the presumption is rebuttable and gives way so readily to explanatory circumstances that any reasonable excuse for the forgetfulness is sufficient to carry the case to the jury on the question of the plaintiff's contributory negligence."

In Lyon v. Grand Rapids, 121 Wis. 609, 99 N. W. 311, it is held that, where it is shown in an action of this character that the plaintiff knew of the defect in the sidewalk, then contributory fault on her part in not remembering and avoiding the danger is to be presumed, in the absence of satisfactory excuse for forgetting it, but that this presumption yields easily to evidence showing circumstances reasonably calculated to cause a person so circumstanced to momentarily forget the danger. See, also, Robinson v. City of Oconto, 154 Wis. 64, 142 N. W. 125; Kelly v. Blackstone, 147 Mass. 448, 18 N. E. 217, 9 Am. St. Rep. 730. Mr. McQuillin in his work on Municipal Corporations says:

"The rule seems to be that if there is a sufficient cause for the temporary forgetfulness, or the attention of the traveler is diverted for the moment, the failure to take notice of the defect is not contributory negligence." 6 McQuillin on Municipal Corporations, § 2827.

[1] While the exact question here presented does not appear to have been directly treated in this state, yet a review of our authorities would clearly indicate that this court is committed to the view that forgetfulness and inattention to a known danger does not excuse the negligence of plaintiff.

In Wood v. Richmond, etc., R. R. Co., 100 Ala. 660, 13 South. 552, the opinion concluded with the following language:

"We cannot foresee the result if it be once admitted that mere forgetfulness, or inattention, can excuse negligence."

And language of similar import is found in the more recent case of Kilby Frog & Switch Co. v. Jackson, 175 Ala. 125, 57 South. 691. See, also, L. & N. R. R. Co. v. Hall, 87 Ala. 708, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84.

The foregoing cases do not involve, however, pedestrians upon the streets of a city, and injuries resulting from a defect therein, and the language used, of course, had reference to the general rule. The language used in the opinions in the cases of Mayor & Aldermen of Birmingham v. Tayloe, 105 Ala. 170, 16 South. 576, and Mayor & Aldermen v. Starr, 112 Ala. 98, 20 South. 424, although dictum upon this particular point, would clearly indicate the application of the same rule to pedestrians. These cases, of course, do not present the question as to what may be considered by the jury as excuses for the momentary forgetfulness or inattention. Any one interested will find numerous authorities collated in the note above referred to in 21 L. R. A. (N. S.) beginning on page 648.

[2] From our investigation of the subject, we have concluded that the true rule is, succinctly stated by the Supreme Court of Wisconsin in the case of Lyon v. Grand Rapids, supra, to the effect that when the plaintiff knew of the defect in the sidewalk, then contributory negligence on her part in not remembering and avoiding the danger is to be presumed, in the absence of satisfactory excuse for forgetting. This rule merely places upon the pedestrian, after it appears that he well knew of the defective condition of the sidewalk, and its attending danger, the burden of offering testimony to excuse his forgetfulness or inattention.

[3] In the instant case, the testimony for the plaintiff clearly discloses that she knew of the defect and its danger of tripping the pedestrian; and it is clearly to be inferred from her testimony that her fall was due to her inattention or forgetfulness. There is nothing in the evidence offered by the plaintiff by way of excuse for this forgetfulness or inattention. It is argued, however, that the plaintiff stated that it was dark, and she could not see, but this clearly is no excuse for inattention, but rather the contrary. McQuillin on Municipal Corporations, vol. 6, § 2829; 28 Cyc. 1431.

[4] Charges 3 and 5 must therefore be considered in the light of the evidence in this case. Had there been any evidence tending to show an excuse for the momentary forgetfulness, it may be that these charges would have been condemned as either erroneous or misleading, in failing to make note thereof; but, there being no such evidence, there was no occasion for any reference thereto.

We have examined the oral charge of the court and also the charges at the request of the defendant city of Birmingham, and we do not find where the substance of these charges has been incorporated in either. Other charges along the same line, which we do not deem necessary to specifically treat, were also refused, and it is clear that this particular phase of the question of contributory negligence was not presented to the jury in any of the instructions.

We therefore think that the refusal of these charges must work a reversal of the cause.

The cases of City of Montgomery v. Ross, 195 Ala. 362, 70 South. 634, and City of Birmingham v. Gordon, 167 Ala. 334, 52 South. 430, are not in conflict with the holding here, as to these refused charges; those cases merely holding that the question of contributory negligence, under the facts there disclosed, was one for the consideration of the jury. In the latter case, the opinion clearly shows that there was evidence tending to show due care on the part of plaintiff, notwithstanding her knowledge of the defect. In the instant case, there was no proof on the part of plaintiff tending to show the exercise of care or caution; but the jury could infer that the accident was the result of inattention or forgetfulness.

[5, 6] The courts take judicial notice of the appointment by the chief executive of a notary. Sandlin v. Dowdell, 143 Ala. 518, 39 South. 279, 5 Ann. Cas. 459. This court has further held that where a commission is required to be signed by the appointing power, the issuance of a commission is essential to the completeness of the appointment. Draper v. State, 175 Ala. 547, 57 South. 772, Ann. Cas. 1914D, 301. Notaries public are required to have a commission issued to them. Sections 1469–1471, inclusive, Code 1907.

[7, 8] We therefore judicially know that Mr. Wilkinson, the notary public who took the affidavit of the plaintiff to her statement of claim referred to in the statement of the case, was a notary public whose commission expired in July, 1915. The rule, as to taking judicial notice of commissioned officers of the state, of course, has no application with respect to de facto officers, as this is a matter of proof. Williams v. Finch, 155 Ala. 399, 46 South. 645.

[9] Under section 12, General Acts 1915, p. 298, the filing of a sworn claim for personal injuries, etc., with the city clerk, or other officer corresponding thereto, within 90 days from the receipt of such injuries, is a condition precedent to the right to maintain a suit therefor.

[10] Of course, the claim in question could not be a sworn claim within the influence of this provision, unless sworn to before one authorized to administer oaths. As the courts take judicial notice of the fact that the commission of Mr. Wilkinson as a notary public had expired, and he was not therefore a de jure officer, and as the courts do

not take judicial notice of de facto officers, it was incumbent upon the plaintiff, in this situation, to offer proof to show such authority; that is, that he was in fact a de facto officer. This was not done upon the trial of the cause, but this proof was offered upon motion for a new trial.

[11] While it may be that, under the provisions of section 1473 of the Code of 1907, the evidence offered on the motion for a new trial was sufficient to disclose that Mr. Wilkinson was a de facto notary public at the time he took the plaintiff's acknowledgment, and that his act in so doing was, within the language of said section, valid and binding as an official act, yet we are of the opinion that this proof, lacking upon the main trial of the cause, could not be supplied upon the motion for a new trial. The argument that this was error without injury presupposes that the testimony had upon the motion for a new trial was not such as could be controverted. This, however, is not correct, and clearly demonstrates that this lack of proof upon the main trial of the cause could not be so supplemented. While a decision of this question is not necessary to be determined upon this appeal, we have stated this much in view of another trial of the cause.

The question as to whether or not the proof was sufficient as to the filing of the claim with the clerk of the city of Birmingham need not arise upon another trial, and therefore is unnecessary to be here discussed.

We are of the opinion there was no liability on the part of defendants Lovett and Cates, and we do not deem this question of sufficient importance for separate treatment here.

[12] Nor was there error in sustaining the objection of the plaintiff to testimony offered by the defendant, to the effect that no complaints of this defect in the sidewalk had reached the street department of the city.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.