LENA HESSE, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, January 10, 1919.

**Municipal corporations — city of New York — negligence — liability for construction of sidewalks on grade — injury to pedestrian by slipping and falling on slope on sidewalk — evidence — constructive notice.**

Where a street is not level, the municipal authorities must of necessity determine whether sidewalks shall be constructed on a grade to conform to the grade of the street or with abrupt grades as by inserting steps; and ordinarily which course should be pursued is a matter of judgment that must be left to the municipal authorities, and for an error with respect to which it is not answerable in damages, at least not until it is shown by experience that it is dangerous and the city has actual or constructive notice thereof in time to remedy the dangerous condition.

In an action against the city of New York for personal injuries to plaintiff from slipping on the sidewalk and falling, it appeared that the sidewalk at the point of the accident was generally down grade toward the south and sloped from ten to ten and one-half inches in fifteen feet, and in front of a new building to the south, one inch in fifteen feet; that the walk at the time of the accident was perfectly dry and the sole complaint was that the slope was dangerous. It did not appear who constructed the sidewalks, other than as may be inferred from the fact that they were constructed in connection with the erection of adjacent buildings, or that the walk was not constructed according to the established grade. Evidence examined, and

*Held*, that the complaint should have been dismissed.

Evidence with respect to other people slipping on the slope in question was insufficient to give the city constructive notice that the sidewalk could not be used in safety by pedestrians exercising proper care.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of June, 1918, upon the verdict of a jury for $1,750.

*John F. O'Brien* of counsel [*Terence Farley* with him on the brief; *William P. Burr, Corporation Counsel*], for the appellant.

*Louis Joseph* of counsel [*Ralph Guttchen*, attorney], for the respondent.

LAUGHLIN, J.:

The plaintiff resided in No. 3766 Park avenue in the borough of The Bronx, and on the 16th day of December, 1916, she walked from her home to the market on Bathgate avenue, east of Park avenue and a few blocks northerly from where she lived, and after doing her marketing she was returning home on the easterly side of Park avenue between five-thirty and six o'clock in the evening, carrying a marketing bag in her hand, and when in front of No. 3814 she slipped on the sidewalk and fell, sustaining injuries to recover for which this action was brought. The sidewalk was eight and a half feet in width from the curb to a coping wall around an areaway in front of No. 3814 at the southerly line of those premises. The building known as No. 3814 and the sidewalk in front of it had been constructed some years before, but a new building

known as No. 3810 was thereafter constructed adjoining it on the south, in the month of April preceding the date of the accident, and the sidewalk in front of that building connecting up with the sidewalk in front of No. 3814 was constructed about the same time. Opposite the building line where these two walks joined, the sidewalk in front of the new building to the south was from five and a quarter to five and three-quarters inches lower at said coping or inner line than the sidewalk in front of the old building to the north as originally constructed, but they were at substantially the same level at the curb and at from one to two feet from the curb. The southerly end of the walk in front of No. 3814 had been broken up, doubtless during the building operations. The surface of the two walks at this point were joined by forming what is described as a " slope patch " by filling in cement from the edge of the lowered sidewalk northerly for a distance of two feet and four inches to meet the surface of the old walk in front of No. 3814, so that the new connecting surface had a grade of five and a quarter or five and three-quarters inches on the slope patch at the inner line, four and a half inches two feet from the inner line, three and a quarter inches four feet from the inner line, and two and three-quarters inches midway between the inner line and the curb. About eight and one-half feet northerly from the building line between said premises there were balustrade blocks at the stairway entrance to No. 3814 projecting over the walk about or a little more than two feet beyond said coping. This upward slope in the walk from opposite the building line between the premises for the distance of two feet four inches towards the north, gradually disappeared from the inner line of the walk towards the curb and, as already stated, wholly disappeared within one or two feet of the curb. The sidewalk was generally down grade towards the south at this point, and the slope in front of No. 3814 was from ten to ten and a half inches in fifteen feet, and in front of the building to the south one inch in fifteen feet, and the new building to the south was some inches lower than the older building to the north.

The plaintiff testified that she was walking near the building, and her testimony is susceptible of the construction that she slipped on this slope, which was down grade as she was

walking. She says that she gave no particular attention to the sidewalk and was just walking along, and that the sidewalk was perfectly clear and that there was no snow or ice on it. There is no evidence that the sidewalk was either wet or moist or that it was smooth or slippery. The sole complaint is that this was a dangerous slope. It does not appear who constructed the sidewalks otherwise than as may be inferred from the fact that they were constructed in connection with the erection of the adjacent buildings. There is no evidence with respect to the established grade of the sidewalk at this point, or that the walk at the time of the accident was not constructed according to the established grade. The plaintiff testified that she had passed over this walk before but not often, and that she had never noticed the slope and never before considered it dangerous. One witness called by the plaintiff testified that she had fallen at this point six months before, but she gave no description of conditions at that time excepting that she said there was no snow on the ground; and another witness testified that prior to the accident and about two years before the trial, which was on the 5th day of June, 1918, she slipped on the slope about two feet from the inner line of the walk but regained her balance and did not fall; and another witness testified that she had seen two or three people slip and fall there in the summer time.

On the part of the city it was shown by the records of the United States Weather Bureau that the day before the accident twelve inches of snow fell, and that the temperature was below freezing the day of the accident and the day before; but the testimony of the plaintiff that there was no snow or ice on the walk at the time of the accident stands uncontroverted. A photograph of the sidewalk received in evidence shows that, with the exception of the slope, it was perfectly even and in good condition.

Where a street is not level the municipal authorities must, of necessity, determine whether sidewalks shall be constructed on a grade to conform to the grade of the street or with abrupt grades, as by inserting steps; and ordinarily which course should be pursued is a matter of judgment that must be left to the municipal authorities, and for an error with respect to which it is not answerable in damages, at least not

until it is shown by experience that it is dangerous and the city has actual or constructive notice thereof in time to remedy the dangerous condition. (*Stratton* v. *City of New York*, 190 N. Y. 294; *Butler* v. *Village of Oxford*, 186 id. 444; *Gastel* v. *City of New York*, 194 id. 15; *Terry* v. *Village of Perry*, 199 id. 79; *Clemence* v. *City of Auburn*, 66 id. 334.) The slope of this sidewalk was no greater than may be seen at different points on the sidewalks of all municipalities, and to hold the city liable for an accident claimed to be due to such a slope would be to impose an undue burden on the taxpayers. The evidence with respect to other people slipping on this slope was insufficient to give the city constructive notice that the sidewalk could not be used in safety by pedestrians exercising proper care. (*Gastel* v. *City of New York, supra.*) If people do not exercise proper care, they are always in danger of slipping on walks that are not perfectly level, and especially if they land on their heels and the heels of their boots or shoes are worn. It is to be inferred from the plaintiff's testimony that this walk was perfectly dry, and she must have known that she was walking on a down grade. Unless the city is to be held as an insurer against changes of grade, it should not be held liable on these facts. If the evidence, in any view, were sufficient to take the case to the jury, I think the verdict should not be permitted to stand in so far as it is predicated on defendant's negligence. I am of opinion that the defendant's motion for a dismissal of the complaint should have been granted.

It follows that the judgment should be reversed, with costs, and the findings of negligence on the part of the defendant and freedom from contributory negligence on the part of the plaintiff reversed, and the complaint dismissed, with costs.

CLARKE, P. J., PAGE, SHEARN and MERRELL, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.