1 So.2d 1

**CITY OF BIRMINGHAM v. MONETTE et al.**

6 Div. 695, 695A.

Supreme Court of Alabama.

March 6, 1941.

Rehearing Denied April 3, 1941.

110

John S. Foster, of Birmingham, for appellant.

THOMAS and FOSTER, JJ., dissenting.

Lange, Simpson, Brantley & Robinson and W. P. Rutledge, all of Birmingham, for appellees.

FOSTER, Justice.

Two actions were tried together, resulting in a judgment for plaintiffs in both. Defendant has appealed in them, and they are submitted on one record. They grow out of personal injuries sustained by Mrs. Monette, and she and her husband separately are the plaintiffs in the two actions.

The injuries occurred at the intersection of an alley with the east side of Twelfth Street, South, in Birmingham. The sidewalk sloped toward the north at a grade of about five and one-half percent as it reached the alley intersection. The intersection was about ten feet wide, paved with paving brick on edge, while the sidewalk was paved with concrete. The alley served as an entrance for ambulances to the South Highlands Hospital situated on the corner between the alley and the sidewalk in question. The paved intersection across the sidewalk had been erected by the city and in use for some twenty-five years. The constant use of it by vehicles entering caused a depression of the brick in the location where the wheels rolled over it. The edges of the brick had worn slicker than when it was first constructed. And so that about the location in the brick sidewalk in the intersection where Mrs. Monette was walking down the street, there was a decline of about fifteen percent. or three and five-eighths inches in two feet. At the edge of it on the east, the decline was greater than it was in the center.

Mrs. Monette was walking down the sidewalk and reached the brick entrance, above described, about nine o'clock at night. The place was well lighted by the nearby street light. She testified that as soon as she stepped on the brick she slipped and fell, causing serious injury to her knee and other injuries and bruises: that she "had been over that place any number of times," and knew the alley was there, and she could see where she was going, and could see that the concrete pavement was ending, and that the alley was beginning, and it was obvious that there was a slight slope there, and supposed she had always known there was a slight slope there, "*but didn't think about it that night*. I was walking on intent on getting to my car" —that though she had seen the alley, she "had never analyzed it in (her) own mind." That she did not stumble, but slipped and went down so quickly that she didn't know what happened; that she did not slip on a foreign body of any kind, but on the pavement itself; that she was looking down at a kind of angle in front of her, and could see in front, and in the direction in which she was going; her eyes, were rather on the sidewalk ahead of her and not on that part where her feet touched, but proceeding along in a normal way.

The evidence of one witness was that he operated a bakery across the street from 1929 until the end of 1932; that those brick were worn slick: that in that period of time he had seen three women and one man slip and fall at this place, but apparently without injury; that he never considered it a dangerous place, and never made any complaint to the city about people falling there; that he had seen people fall at other places on the sidewalks. Other witnesses testified that they had seen some three other people fall at the same place walking down the street as Mrs. Monette was doing, and that many others were seen to slip without falling.

An assistant engineer testified that he had been familiar with this alley about eighteen years as a city employee whose duties are partly to investigate claims

against the city, and that he never knew or heard of anyone falling at this place, until Mrs. Monette fell: that the brick were laid there some twenty-five or thirty years at least before by the city. The brick were paving brick which had been in common use, but not now used so much as formerly, and one of them has been certified for our inspection.

Count 1 of the complaint, on which the suit was tried, alleged that the defect consisted "of the slick kind of brick with which said public way was paved, the defective condition of said brick, the defective arrangement of said brick with reference to each other, and the slant, angle or pitch created by said defective arrangement, material and construction," and that she was caused to fall "by reason of the slick, slanting, uneven, defective and dangerous condition of the walking surface."

When tested by demurrer taking the point, we think such allegations are sufficient to charge a dangerous defect, and that the count is not subject to demurrer on account of a failure in that respect. City of Birmingham v. Wood, Ala.Sup., 197 So. 885 [1]; Mayor and Alderman of Birmingham v. Starr, 112 Ala. 98, 20 So. 424; Birmingham v. Smith, 231 Ala. 95, 163 So. 611; Birmingham v. Gordon, 167 Ala. 334, 52 So. 430.

The count was not defective in any other respect to which attention was directed by the demurrer, and as here contended.

Appellant insists that the evidence does not show such a defect as described in the complaint, or, if so, that Mrs. Monette knew of its condition and did not use due diligence to avoid it or to pass over it safely.

The duty of the city is not to make such places level nor on a uniform plane of decline, nor to use the most approved material, nor to make them free from all danger, but it is its duty to use due care to construct and maintain them in a reasonably safe condition as to such persons as may be expected to use them in the exercise of due care. So that if the percentage of decline was such that the material used was when constructed dangerously slick, or had become so by use known to the city (or which ought to have been known to it), when used with due care by those who would probably use it, and such

a one is injured thereby in such use, there is said to be a liability for it. 43 Corpus Juris 1017, 1018 (Municipal Corporations) section 1795. The city does not violate this principle by maintaining a sloping or uneven place in the sidewalk where the contour of the layout reasonably suggests such a condition as proper or to be anticipated by pedestrians—no other defect being shown to exist. See Hesse v. City of New York, 185 App.Div. 707, 173 N.Y.S. 827; City of De Pere v. Hibbard, 104 Wis. 666, 80 N.W. 933; Cook v. Milwaukee, 27 Wis. 191; City of Pikeville v. Williams, 213 Ky. 52, 280 S.W. 467.

The rule does not prohibit the use of smooth surfaced paving material, nor a construction with a slope suited to the situation, but does prohibit a combination of those conditions if they create a situation not reasonably safe for the use of people for whom it is designed, exercising ordinary care in that regard. The fact that many people had fallen there as did Mrs. Monette, and that many others had slipped without falling, has a tendency to support the theory that it was not reasonably safe.

And the fact that those occurrences had continued over a long period of years, and evidence that it was slick and sloping was sufficient to submit to the jury the question of whether it was a dangerous defect, and the fact that it was a construction made by the city and its engineers were familiar with its condition during the period of its use, is sufficient to submit to the jury the issue as to whether the city was negligent in maintaining it in that condition. Mayor and Alderman of Birmingham v. Starr, supra.

The defendant insisted upon a claim of contributory negligence embraced in the pleas, and the court left that issue to the jury.

We have shown that Mrs. Monette testified that she had been over the place any number of times and knew it was there, and that she was approaching it: that the slope was obvious to her, and that she was familiar with it, "but didn't think about it that night, I was walking on intent on getting to my car."

The rule approved by this Court is that, if "plaintiff knew of the defect in the sidewalk, then contributory negligence on her part in not remembering and avoiding

the danger is to be *presumed,* in the absence of satisfactory excuse for forgetting. This rule merely places upon the pedestrian, after it appears that he well knew of the defective condition of the sidewalk, and its attending danger, the burden of offering testimony to excuse his forgetfulness or inattention." City of Birmingham v. Edwards, 201 Ala. 251, 77 So. 841, 845.

■ Such excuse must be something apart from inattention itself, and result from some external circumstance, and not the mere mental absorption upon some other subject. Racine Tire Co. v. Grady, 205 Ala. 423, 88 So. 337; 43 Corpus Juris 1087, note 13; 20 R.C.L. 110 (Negligence) section 96, note 14.

■ If the evidence here sufficiently shows her knowledge of the condition of the place in question, its nature, and that it was dangerous, there was cast on her the duty to remember the danger, and use due care to avoid injury, or to give some reason for not doing so, at least sufficient for the jury to find that she was excused. Her inattention or concentration upon some other thought is not sufficient, unless stimulated by some exterior immediate circumstances tending to distract her attention. That she was "intent on getting to her car," is not a sufficient justification or excuse for her inattention to the defective condition. She does not claim that she used any care to avoid the danger. This was her duty having knowledge of it. Montgomery v. Ross, 195 Ala. 362(3), 70 So. 634; Walker v. Smith, 199 Ala. 514, 74 So. 451.

■ The rule is that plaintiff is presumed to know and appreciate the danger when the situation is known to him and its danger is obvious. 45 Corpus Juris 947.

THOMAS and FOSTER, JJ., are of the opinion that since she shows her familiarity with the location, if it was dangerous as claimed she must be presumed to know of those conditions which make it dangerous or was negligent in not doing so, since they were open to ordinary observation.

The majority views are expressed in the opinion of Justice BOULDIN, in which GARDNER, C. J., BROWN and LIVINGSTON, JJ., concur.

BOULDIN, Justice.

■ We are of the opinion the question of contributory negligence was an issue for the jury.

Evidence tended to show one of the elements of danger was that the bricks had worn slick. While plaintiff's evidence discloses she was quite familiar with the sloping conditions, it is not conclusive that she knew the special danger from the slick condition of the bricks. Nor was this defect shown to be so obvious that one walking in a normal way along the sidewalk at this point must be charged as matter of law with knowledge of such extra hazardous condition. The case, therefore, should not be held as matter of law to be within the rule declared in City of Birmingham v. Edwards, 201 Ala. 251, 77 So. 841, but rather within the principles declared in Houston v. Town of Waverly, et al., 225 Ala. 98, 142 So. 80, (see headnotes 14 to 18, inclusive); and in City of Birmingham v. Guy, 222 Ala. 373, 132 So. 887, and authorities cited in above decisions.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.

THOMAS and FOSTER, JJ., dissent.