VINCENT SCAPECCHI, APPELLANT, v. HAROLD'S CLUB, A CORPORATION, ST. CHARLES BUILDING COMPANY, A CORPORATION, COLONY CLUB, JACK DOUGLAS, AND FRANK P. QUINN, RESPONDENTS.

No. 4485

May 25, 1962   371 P.2d 815

*Stewart, Horton & McCune,* and *Donald Stuart Bab,* of Reno, for Appellant.

*Goldwater, Taber and Hill,* and *Wayne L. Mortimer,* of Reno, for Respondents Harold's Club and St. Charles Building Company.

*Guild, Busey & Guild,* and *William C. Thornton,* of Reno, for Respondent Colony Club.

*Vargas, Dillon & Bartlett,* and *Alex. A. Garroway,* of Reno, for Respondent Jack Douglas.

*Ernest S. Brown* and *Jack I. McAuliffe* of Reno, for Respondent Frank P. Quinn.

# O P I N I O N

By the Court, McNAMEE, J.:

Appellant during the daytime was walking in Lincoln Alley, a public street in the city of Reno which connects with Douglas Alley to form a T. He slipped and fell directly in front of the kitchen door of the Golden Hotel Coffee Shop. It was a clear day and the alley was dry. The Golden Hotel, one of the defendants in the court below but not a party to this appeal, is the owner of the property abutting the alley at the place where appellant fell. Appellant testified that grease caused the fall, and that it was not visible because it blended with the

terrazzo surface of the alley. This evidence was corroborated by Mr. and Mrs. Kern who also were walking in the alley and saw appellant immediately after the fall. Mr. Kern helped appellant to his feet and "when I was assisting him I had to be careful I didn't slip myself." Davis, a janitor employed by the Golden Hotel, had joined Mr. Kern in helping appellant to his feet. He testified that he had mopped up grease with hot water and a strong detergent where appellant had fallen a minute or two before appellant fell; that there was no grease at all on the pavement which could have caused the fall; and that the pavement could have been "a little damp" from the mopping.

In his complaint for damages resulting from the fall appellant alleges that the respondents (and others not parties to this appeal) were negligent:

"(a) In ordering, directing and arranging for the surface of Douglas Alley * * * to be paved with terrazzo, a substance * * * extremely slippery when wet, and hazardous to persons walking over and upon it.

"(b) In failing to warn or notify the general public, * * * that the surface * * * was extremely dangerous, hazardous and slippery when wet or when liquids of any kind were upon it; * * *

"(c) In failing to correct the slippery condition * * * by buffing, scratching, or roughing the surface thereof * * * ."

The respondents were joined in the complaint as parties defendant by reason of the fact that they and others who owned or were interested in property bordering Douglas Alley and Lincoln Alley had signed an agreement with the city of Reno, which permitted them to pave the alley at their own expense with a terrazzo surface. The agreement provided that they would keep a stockpile of materials for repair and maintenance, and that for a period of ten years they would jointly and severally be responsible "for the good repair and maintenance of the terrazzo surface" and that the city would be responsible for the maintenance of the base concrete slab.

Summary judgments were granted in favor of the present respondents. Appeal is from such judgments.

Because reference is made hereinafter to other parts of said agreement, we quote its entire contents:

"THIS AGREEMENT made and entered into this 1st day of May, 1949, by and between the City of Reno, a municipal corporation existing under and by virtue of the laws of the State of Nevada, hereinafter called First Party, and the undersigned owners or lessees of property abutting on Douglas or Lincoln Alleys in the City of Reno, hereinafter called Second Parties;

"WITNESSETH:

"WHEREAS, First Party is about to commence paving of Douglas and Lincoln Alleys in the City of Reno, the cost of which contemplated paving has been discharged by special assessment against the property abutting on said Alleys, and

"WHEREAS, Second Parties desire that the surface of said alleys shall be paved and completed pursuant to the plans and specifications prepared by Frank Green, Architect, and

"WHEREAS, the surfacing of said Alleys as desired by Second Parties will add to the total cost of paving said Alleys as originally contemplated by First Party, and

"WHEREAS, Second Parties are willing to defray the additional cost of surfacing said Alleys, and

"WHEREAS, First Party is willing to permit Second Parties to cause the above-described unusual surface to be placed on said Alleys on the terms and conditions hereinafter set forth;

"Now, THEREFORE, the parties agree as follows:

"1. That Second Parties may enter into an agreement with the contractor to whom the contract for the paving of said Douglas and Lincoln Alleys was heretofore awarded, by the terms of which agreement a terrazzo surface may be installed on said Alleys.

"2. That Second Parties shall pay said contractor the cost of installing said terrazzo surface on said Alleys.

"3. That Second Parties shall stock-pile not less than _____ yards of the materials used in surfacing said Alleys and keep said materials available for repair and maintenance of said Alleys for a period of not less than ten (10) years from date hereof.

"4. That during a period of ten (10) years from date hereof Second Parties shall be, jointly and severally, responsible for the good repair and maintenance of the terrazzo surface to be installed on said Alleys and First Party shall be responsible for the maintenance of the base concrete slab constructed in said Alleys during said period.

"5. This agreement shall be binding upon the parties hereto and their heirs, executors and assigns.

"IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed and have hereunto set their hands and seals the day and year first above written.

"CITY OF RENO
By /s/ F. R. Smith, Mayor,
"ATTEST:

| | |
|---|---|
| Harold's Club | /s/ Guy L. Lent, Secy. |
| St. Charles Bldg. Co. | /s/ Guy L. Lent, Secy. |
| Bank Club | /s/ Fred J. Lymbery |
| Frontier Club | /s/ Joe S. Hobson |
| Murray's | /s/ Murray B. Jacobs |
| Sam Frankovitch | Wine House |
| /s/ N. W. Jacobs | Ritz Hotel |
| /s/ James Powers | Colony Club |
| /s/ Jack Douglas | { Cherokee Club Farley's Snack Bar |
| /s/ J. B. Sullivan | Bank Club |
| /s/ James H. Lloyd | Golden Hotel |
| /s/ Robert A. Ring | (Mgr.) Harrah's Club |
| /s/ Lincoln Fitzgerald | Nevada Club |
| Young Investment Co. | Frank P. Quinn |
| Dominico Parmigiano" | |

Even though the respondents acted in unison in paving the alleys with a terrazzo surface, this in itself created no duty to the general public which would require respondents to keep the alleys in a reasonably safe condition. Major v. Fraser, 78 Nev. 14, 368 P.2d 369.

Appellant maintains, however, that such duty does arise from said agreement wherein they promised to be responsible "for the good repair and maintenance of the terrazzo surface"; that because of these quoted words, each respondent owed the general public the duty of keeping clean and in a reasonably safe condition not only that part of the alleys abutting his property but also the entire surface of both alleys.

We cannot accept such a construction of the agreement. In our opinion, we interpret the words "repair and maintenance" to require respondents only to keep the surface of the alleys in the same condition as when the surface was installed and not to require them to keep the alleys clean. This is the only interpretation consistent with the "WHEREAS" clauses of the agreement.

In Louisville & N. R. Co. v. Stanley, 232 Ala. 273, 167 So. 745, the railroad was under a contract obligation with the city to construct and maintain a certain bridge. Stanley was injured thereon because an accumulation of ice and snow was allowed to remain on the floor of said bridge. The court there held:

"We are of the opinion, and so hold that the duty placed upon the defendant was to keep the bridge in repair from a structural standpoint and that it was not contemplated that it was to keep said street free from foreign objects or defects, such as ice, banana peelings, or other accumulations not inherently a part of the structure. We therefore hold that as a matter of law the contract in question placed no duty upon the defendant to remove ice or snow or other extrinsic substances from the bridge."

In City of Denver v. Denver City Cable Ry. Co., 22 Colo. 565, 45 P. 439, the word "maintain" as used in a franchise ordinance was construed to mean that the cable car company was required to keep certain syphons in repair or replace, "and does not mean the keeping of them clean and in a sanitary condition."

The fact that respondents assumed the duty of repair and maintenance can in no manner imply that they assumed any duty owed by the city to the general public, for the city by statute is immune from such liability.

1957 Stats. of Nev., ch. 287, sec. 5. The only burden shifted from the city to the respondents by this agreement was the burden of the expense for the good repair and maintenance of the structural aspects of the terrazzo surface. That this was the intent of the parties to the contract is further established by the subsequent provision that the city retains the responsibility for the maintenance of the base concrete slab.

We conclude, therefore, that there is nothing in the contract express or implied which imposes upon respondents a joint and several liability for injuries to persons caused by nonstructural conditions of the terrazzo surface, particularly at places other than those abutting their property.

As heretofore stated, the evidence was in conflict as to whether appellant slipped because of a greasy or moistened surface. Such conflict is immaterial on this appeal because regardless of what condition contributed to appellant's fall, there was no evidence to charge any of these respondents with the creation of the condition. Although there was evidence that other persons had slipped in the alleys it was not shown what caused them to slip and no evidence was presented to show that a terrazzo surface is inherently slippery when wet. The mere unverified allegations regarding the characteristics of a terrazzo surface did not present factual issues which would preclude a summary judgment. Dredge Corp. v. Husite Co., 78 Nev. 69, 369 P.2d 676.

A city has some discretion with respect to the type of construction and the materials used. As stated in Birmingham v. Monette, 241 Ala. 109, 1 So.2d 1, 3, 133 A.L.R. 1020, 1024:

"The duty of the city is not to make [sidewalks] level nor on a uniform plane of decline, nor to use the most approved material, nor to make them free from all danger, but it is its duty to use due care to construct and maintain them in a reasonably safe condition as to

such persons as may be expected to use them in the exercise of due care."

Appellant complains that the lower court passed on the motions for summary judgment before acting upon his requests for admissions and before answers to the interrogatories were furnished. Any right of the appellant to require compliance with such requests prior to the hearing of the motions to dismiss was waived by appellant's failure to object to the hearing of the motions while such matters were pending.

Because of our conclusions herein, it is unnecessary to consider whether respondent Quinn signed the agreement as an individual or in a representative capacity on behalf of Young Investment Co.

Affirmed.

BADT, C. J., and ZENOFF, D. J., concur.

THOMPSON, J., being disqualified, the Governor designated HONORABLE DAVID ZENOFF, Judge of the Eighth Judicial District, to sit in his stead.