SHAW, Justice.
 
 [1]
 

 The plaintiffs below, Ollie Underwood, Peggy Mobley, and Gayle Gear, appeal from a judgment in favor of the defendants below, the Alabama State Board of Education (“the Board”); Governor Bob Riley, in his official capacity as president and member of the Board; and Randy McKinney, Betty Peters, Stephanie W. Bell, Ethel H. Hall, Ella Bell, David F. Byers, Jr., Sandra Ray, and Mary Jane Caylor, in their official capacities as members of the Board, based on allegations that the' notice the defendants posted before a May 10, 2007, meeting of the Board violated Alabama’s Open Meetings Act.
 
 [2]
 
 We hold that the issue presented by this appeal -has become moot, and we dismiss the appeal.
 
 [3]
 

 Facts and Procedural History
 

 The plaintiffs’ claims were tried pursuant to the following' stipulated facts, as agreed to by the parties:
 

 “10. Notice submitted by defendant Board to the Secretary of State’s office advised the public that on March 2, 2007, defendant [Bjoard would hold a special meeting for the following purpose: ‘to accept the resignation of the interim chancellor and consider the administration of the Alabama Department of Postsecondary Education and the Alabama College System. The meeting is open to the public.’ ...
 

 “11. A press release summarizing the Board’s official actions in a document entitled ‘Board Briefs’ dated March 2, 2007, stated ‘the Board expects to search for a permanent Chancellor soon.’ ...
 

 “12. As noted by attached Exhibit 8, on April 80, 2007, defendant Board submitted notice to the Secretary of State of the scheduling of special called work session for May 9, 2007 and provided a general description of the meeting as: ‘Special called work session to discuss the search for- a permanent Chancellor.’
 

 “13. With the exception of defendant Ella Bell, all individual defendants, in their official capacity, were present at the afternoon work session held on May 9, 2007.
 

 [[Image here]]
 

 “86. No meeting subject to the Open Meetings- Act occurred, in which the nomination of Chancellor Byrne was deliberated or voted upon, prior to the May 9, 2007, specially called work session.
 

 “37. Plaintiffs are not seeking statutory penalties for alleged violations of the Open Meetings Act but are seeking attorney fees and costs.
 

 “38. Public notice with respect to the May 9th specially called work session was submitted to the Secretary of State
 
 *124
 
 on April 30, 2007 at 4:56:40 PM, and published qmore than nine days in advance of the meeting....
 

 “39. Public notice with respect to the May 9th specially called work session accurately stated the meeting date as ‘5/9/2007’ and the meeting time as ‘2:00 PM’ and identified the meeting-type as ‘special/called.’ ... Additionally, the meeting location was accurately listed, a contact number was provided, and the Alabama State Board of Education/Post-secondary Education was identified as the party who posted the notice....
 

 “40. Public notice with respect to the May 9th specially called work session contained a general description of the nature and purpose of the meeting as a ‘[s]pecial called work session to discuss the search for a permanent chancellor.’
 

 [[Image here]]
 

 “41. Public notice with respect to the May 10, 2007, special meeting was submitted to the Secretary of State on May 9th at 3:27:54 p.m., and was posted twenty-four hours in advance of the meeting time....
 

 “42. Public notice with respect to the May 10, 2007, special meeting accurately stated the meeting date as ‘5/10/2007,’ and the meeting time as ‘3:30 PM.’ ... The meeting location was accurately listed, a contact number was provided, and the Alabama State Board of Education/Postsecondary Education was identified as the party who posted the notice....
 

 43. Public notice with respect to the May 10, 2007, special meeting contained a general description of the nature and purpose of the meeting as follows:
 

 “ ‘The purpose of this special meeting will be to accept the resignation of the interim chancellor and consider the administration of the Alabama Department of Postsecondary Education and The Alabama College System .... ’
 

 “44. The Agenda with respect to the May 10, 2007 special meeting lists the items of business as ‘Acceptance of Resignation of Interim Chancellor’ and to ‘Consider Administration of the Department of Postsecondary Education and the Alabama College System.’ ...
 

 “45. The general description contained in the public notice with respect to the May 10, 2007, special meeting contains the same description as the items of business contained in the Agenda for that meeting....”
 

 At its May 10, 2007, meeting the Board appointed Bradley Byrne as chancellor of Alabama’s two-year college system. The plaintiffs then filed the underlying declaratory-judgment action and also sought a temporary restraining order, preventing Byrne from assuming the position of chancellor. On May 22, 2007, the trial court entered an order denying the plaintiffs’ request for a temporary restraining order. Thereafter, following the submission of the above stipulated facts and an accompanying brief by each side to the trial court, which heard the case without a jury, on June 17, 2008, the trial court entered an order in which it identified the sole issue before it as “whether the Board’s publicly posted notice with respect to a specially called Board Meeting on May 10, 2007 complied with the requirements of the Open Meetings Act.” The trial court’s order answered that question in the affirmative, concluding that “the Board complied with the Open Meetings Act” and denying the plaintiffs’ requested relief. The plaintiffs appealed.
 

 Standard of Review
 

 “ ‘The trial court in this case applied the law to undisputed, stipulated facts. Our review therefore is de novo.
 

 
 *125
 
 “ ‘ “When reviewing a case in which the trial court sat without a jury and heard evidence in the form of stipulations, briefs, and the writings of the parties, this Court sits in judgment of the evidence; there is no presumption of correctness.
 
 Old Southern Life Ins. Co. v. Williams,
 
 544 So.2d 941, 942 (Ala.1989);
 
 Craig Constr. Co. v. Hendrix,
 
 568 So.2d 752, 756 (Ala.1990). When this Court must determine if the trial court misapplied the law to the undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court.
 
 State Dep’t of Revenue v. Garner,
 
 812 So.2d 380, 382 (Ala.Civ.App.2001); see also
 
 Ex parte Graham,
 
 702 So.2d 1215 (Ala.1997). In this case the trial court based its decision upon the stipulations, briefs, writings, and arguments of the parties’ attorneys. No testimony was presented. Therefore, we must sit in judgment of the evidence, and the trial court ruling carries no presumption of correctness.” ’
 

 “American Res. Ins. Co. v. H & H Stephens Constr., Inc.,
 
 939 So.2d 868, 872-73 (Ala.2006)(quoting
 
 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d 513, 516-17 (Ala.2003)).”
 

 Nix v. McElrath,
 
 952 So.2d 1107, 1110 (Ala.2006).
 

 Discussion
 

 The plaintiffs sought declaratory and in-junctive relief and included a prayer that the trial court:
 

 “1. Issue a declaratory judgment declaring:
 

 “A. The actions of the defendants in failing and refusing to follow [the Board’s] own policies as well as state law require[ ] entry of order invalidating the May 10, 2007 selection for Chancellor.
 

 “B. The actions of the defendants in failing and refusing to follow [the Board’s] policies are improper.
 

 “C. The actions of the defendants in failing and refusing to follow [the Board’s] own policies are arbitrary and capricious actions which constitute a violation of board policy and thus, a violation of Alabama law.
 

 “2. Enter mandatory temporary, preliminary and permanent injunctions requiring defendants to withdraw, invalidate or rescind its action and reopen the process for all applicants [for the position of chancellor] for a period of time greater than 30 days.
 

 “3. Enter an Order requiring that all costs incurred in this case be taxed against the defendants.
 

 “4. Enter an Order enjoining the defendants from taking any further action of placement of Bradley Byrne in the Chancellor position.
 

 “5. That attorney’s fees and costs be awarded; and,
 

 “6. Plaintiffs further pray that they be awarded any other equitable or further relief and any other and further orders and judgments be entered as to which they may be entitled under the facts as alleged above.”
 

 The plaintiffs stipulated below that “[they are] not seeking statutory penalties for alleged violations of the Open Meetings Act but are seeking attorney fees and costs....” They state on appeal that they “seek declaratory relief, not removal of Chancellor Byrne,”
 
 [4]
 
 and that “the ultimate remedy ... will be decided by the Circuit Court upon remand.” (Plaintiffs reply brief, at p. 5.) However, as we have historically done, we examine the language of the complaint to determine the true nature of the plaintiffs’ claims.
 
 *126
 

 See Rutley v. Country Skillet Poultry Co.,
 
 549 So.2d 82, 84 (Ala.1989) (“A court must look to the allegations in the body of the complaint in order to determine the nature of a plaintiffs cause of action.”).
 

 “The substance of the plaintiffs allegations control, not the effort given by the plaintiff to style the claims throughout litigation.
 
 Bailey v. Faulkner,
 
 940 So.2d 247, 258 (Ala.2006) (‘Faulkner places great reliance on the fact that he has been careful to
 
 style
 
 his claims throughout this litigation as negligence and wantonness claims, rather than as an alienation-of-affections claim. However, “[t]his Court has always looked to substance over form.”
 
 Southern Sash Sales & Supply Co. v. Wiley,
 
 681 So.2d 968, 971 (Ala.1994).’ (footnote omitted)).”
 

 Elizabeth Homes, L.L.C. v. Cato,
 
 968 So.2d 1, 8 (Ala.2007). Further, in determining the nature of a plaintiffs claim, we note that “a plaintiff is in control of his or her complaint, [and] we [therefore] accept [the plaintiffs] allegations on their face.”
 
 National Auction Group, Inc. v. Hammett,
 
 854 So.2d 65, 70 (Ala.2003).
 

 Here, based upon the plain language of the plaintiffs’ complaint and the fact that the plaintiffs challenge only the notice dealing with the specific meeting in which Chancellor Byrne was appointed, seek to invalidate the order appointing him, and seek an injunction to prevent the Board from placing Chancellor Byrne in Office, we conclude, as did the defendants, that “[presumably, [the plaintiffs] seek to have the Chancellor’s appointment revoked.”
 
 [5]
 
 (Defendants’ brief, at p. 29.)
 

 We take judicial notice of the fact that Byrne resigned from the position of chancellor in May 2009.
 
 Cf. Cook v. State,
 
 269 Ala. 646, 653-54, 115 So.2d 101, 106 (1959) (“The court takes judicial knowledge of the several commissioned officers of the state, the term of their office, extent of their authority, and the signature of clerks of the circuit courts.”);
 
 Aiken v. McMillan,
 
 213 Ala. 494, 501, 106 So. 150, 157 (1925) (“The courts take judicial knowledge of such official action by the Governor in the appointment of a person as translator and of his qualification in that office as translator....”);
 
 City of Birmingham v. Edwards,
 
 201 Ala. 251, 256, 77 So. 841, 846 (1918) (acknowledging that the courts take judicial notice of the appointment of commissioned officers of the state, including notary publics); and
 
 Casey v. Bryce,
 
 173 Ala. 129, 133-34, 55 So. 810, 811 (1911) (“The issuance of a commission to a public officer, by the Governor of the state, being a public act of public record which is prescribed by law, must be judicially noticed by courts.”).
 
 See also Cullman Broad. Co. v. Bosley,
 
 373 So.2d 830, 832 (Ala.1979) (“Courts may take judicial notice of matters of common knowledge without suggestion of counsel ... and without proof thereof.” (citation omitted)). In light of the foregoing judicially noticed fact, i.e., Chancellor Byrne’s resignation, we must inquire, as a threshold matter and ex mero motu in this instance, whether this case involves a justiciable controversy or whether it has been mooted by Byrne’s intervening resignation.
 

 
 *127
 
 “This Court has often said that, as a general rule, it will not decide questions after a decision has become useless or moot.
 
 Ex parte McFry,
 
 219 Ala. 492, 122 So. 641 (1929);
 
 Byrd v. Sorrells,
 
 265 Ala. 589, 93 So.2d 146 (1957);
 
 Chisolm v. Crook,
 
 272 Ala. 192, 130 So.2d 191 (1961);
 
 Jacobs Banking Company v. Campbell,
 
 406 So.2d 834 (Ala.1981). Alabama courts do not give opinions in which there is no longer a justiciable controversy; yet, Alabama has recognized two exceptions to the mootness doctrine: questions of great public interest and questions that are likely of repetition of the situation.
 
 Byrd v. Sorrells, supra, State ex rel. Eagerton v. Corwin,
 
 359 So.2d 767 (Ala.1977). Neither of these exceptions seems applicable here....”
 

 Arrington v. State ex rel. Parsons,
 
 422 So.2d 759, 760 (Ala.1982).
 

 “ ‘ “A moot case or question is a case or question in or on which there is no real controversy; a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned.”’
 
 Case v. Alabama State Bar,
 
 939 So.2d 881, 884 (Ala.2006) (quoting
 
 American Fed’n of State, County & Mun. Employees v. Dawkins,
 
 268 Ala. 13, 18, 104 So.2d 827, 830-31 (1958)).
 
 ‘The test for mootness is commonly stated as whether the court’s action on the merits would affect the rights of the parties.’ Crawford v. State,
 
 153 S.W.3d 497, 501 (Tex.App.2004) (citing
 
 VE Corp. v. Ernst & Young,
 
 860 S.W.2d 83, 84 (Tex.1993)).
 
 ‘A
 
 case becomes moot if at
 
 any stage
 
 there ceases to be an actual controversy between the parties.’
 
 Id.
 
 (emphasis added) (citing
 
 National Collegiate Athletic Ass’n v. Jones,
 
 1 S.W.3d 83, 86 (Tex.1999)).
 

 “ ‘There must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief under the declaratory judgment statutes, and if there was no justiciable controversy existing when the suit was commenced the trial court had no jurisdiction.’
 
 State ex rel. Baxley v. Johnson,
 
 293 Ala. 69, 73, 300 So.2d 106, 110 (1974). ““Unless the trial court has before it a justiciable controversy, it lacks subject matter jurisdiction and any judgment entered by it is void
 
 ab initio.’ ” ’ Sustainable Forests, L.L.C. v. Alabama Power Co.,
 
 805 So.2d 681, 683 (Ala.2001) (quoting
 
 Hunt Transition & Inaugural Fund, Inc. v. Grenier,
 
 782 So.2d 270, 272 (Ala.2000), quoting in turn
 
 Ex parte State ex rel. James,
 
 711 So.2d 952, 960 n. 2 (Ala.1998)). ‘A moot case lacks justiciability.’
 
 Crawford,
 
 153 S.W.3d at 501.
 
 Thus, ‘[a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it' have become moot by subsequent acts or events.’ Case,
 
 939 So.2d at 884 (citing
 
 Employees of Montgomery County Sheriff’s Dep’t v. Marshall,
 
 893 So.2d 326, 330 (Ala.2004)).
 

 “ ‘ “The lack of a justiciable controversy may be raised either by a motion to dismiss, Rule 12, [Ala. R. Civ. P.], or a motion for summary judgment.” ’
 
 Hornsby v. Sessions,
 
 703 So.2d 932, 937 (Ala.1997)(quoting
 
 Smith v. Alabama Dry Dock & Shipbuilding Co.,
 
 293 Ala. 644, 649, 309 So.2d 424, 427 (1975)). Indeed, ‘[i]t is well settled that lack of subject-matter jurisdiction can be raised at any time by the parties or by the court ex mero motu.’
 
 Ex parte
 
 V.S., 918 So.2d 908, 912 (Ala.2005). ‘ “ ‘[I]f there is an absence of jurisdiction over ... the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent.’’”
 
 Id.
 
 (quoting
 
 Flanniqan v. Jordan,
 
 871 So.2d 767, 768 (Ala.2003), quoting in turn
 
 Norton v. Liddell,
 
 280 Ala. 353, 356, 194 So.2d 514, 517 (1967)). A court without subject-matter jurisdiction ‘ “may take no action other than to exercise its power to dismiss the action .... Any other action ... is null and void.” ’
 
 State v. Property at 2018 Rain
 
 
 *128
 

 bow Drive,
 
 740 So.2d 1025, 1029 (Ala.1999) (quoting
 
 Beach v. Director of Revenue,
 
 934 S.W.2d 315, 318 (Mo.Ct.App.1996)).
 
 An outstanding request for attorney fees ‘does not resuscitate an otherwise moot controversy.’ Cammermeyer v. Perry,
 
 97 F.3d 1235, 1238 (9th Cir.1996). See also
 
 Lewis v. Continental Bank Corp.,
 
 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).”
 

 Chapman v. Gooden,
 
 974 So.2d 972, 983-84 (Ala.2007) (first emphasis original; other emphasis added).
 

 A declaratory-judgment action may be rendered moot.
 

 “Declaratory-judgment actions in Alabama are governed by the Declaratory Judgment Act, codified at §§ 6-6-220 through -232, Ala.Code 1975 (‘the Act’). The Act does not ‘ “empower courts to decide moot questions, abstract propositions, or to give
 
 advisory opinions,
 
 however convenient it might be to have these questions decided for the government of future cases.” ’
 
 Stamps v. Jefferson County Bd. of Educ.,
 
 642 So.2d 941, 944 (Ala.1994) (quoting
 
 Town of Warrior v. Blaylock,
 
 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)) (emphasis added in Stamps). Pursuant to § 6-6-226, declaratory relief may be afforded in cases ‘in which a judgment will terminate the controversy or remove the uncertainty,’ but § 6-6-229 emphasizes the corollary that ‘[t]he court may refuse to enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding.’ ”
 

 Bruner v. Geneva County Forestry Dep’t,
 
 865 So.2d 1167, 1175 (Ala.2003).
 
 See also Hunt Transition & Inaugural Fund, Inc. v. Grenier,
 
 782 So.2d 270, 272 (Ala.2000) (“For a court to grant declaratory relief, it must have before it a bona fide, presently existing justiciable controversy that affects the legal rights or obligations of the parties.”);
 
 VanLoock v. Curran,
 
 489 So.2d 525, 531 (Ala.1986) (“Indeed, moot questions are not properly the subject of declaratory judgment actions.” (citing
 
 City of Mobile v. Scott,
 
 278 Ala. 388, 178 So.2d 545 (1965))).
 

 “ ‘ “The declaratory judgment statutes do not empower courts to decide moot questions [or] abstract propositions or to give advisory opinions, however convenient it might be to have the questions decided for the government of future cases.” ’
 
 Wallace v. Burleson,
 
 361 So.2d 554, 555 (Ala.1978),
 
 quoting State ex rel. Baxley v. Johnson,
 
 293 Ala. 69, 300 So.2d 106 (1974). See, also,
 
 Graddick v. McPhillips,
 
 448 So.2d 333, 336 (Ala.1984). In deciding whether a case is moot, a court must consider ‘whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.’ 13A C. Wright, A. Miller, & E. Cooper,
 
 Federal Practice and Procedure
 
 § 3533, at 212 (1984).
 
 ‘[I]f a, case has become moot, or [if a] judgment would not accomplish an end recognized as sufficient in law, there is no necessity for the judgment', the court will decline to consider the merits, and [the court will] dismiss the case.’ Chisolm v. Crook,
 
 272 Ala. 192, 194, 130 So.2d 191 (1961).”
 

 Hornsby v. Sessions,
 
 703 So.2d 932, 938 (Ala.1997) (emphasis added).
 

 In
 
 State ex rel. Eagerton v. Corwin,
 
 359 So.2d 767, 769 (Ala.1977), the State appealed from a judgment upholding “the right of a member of the Alabama Real Estate Commission residing in the same Congressional District "with another member to continue to hold office until his term expired later in the year of the judgment (1977).” 359 So.2d at 767. Before the case was argued and submitted to this Court on the merits, the subject member’s term expired, and the Governor appointed a successor so that two members no longer resided in the same congressional district. 359 So.2d at 768-69. Thereafter, a motion
 
 *129
 
 to dismiss the appeal as moot was filed.
 
 Id.
 
 In granting that motion, this Court stated:
 

 “As the case stands before us now, there is no justiciable controversy between Eagerton and Corwin and King, involving § 311(4), Tit. 46. The controversy ceased to exist when King’s term as a member of the Commission expired[;] therefore there are no
 
 existing facts
 
 which frustrate the legislative intent as expressed in § 311(4). No longer is more than one member from any Congressional District serving at the same time on the Commission. This renders this case moot. A case is moot when there is no real controversy and it seeks to determine an abstract question
 
 which does not rest on existing facts
 
 or rights.
 
 Postal Telegraph-Cable Co. v. City of Montgomery,
 
 193 Ala. 234, 69 So. 428 (1915);
 
 American Federation of State, County and Municipal Employees v. Dawkins,
 
 268 Ala. 13, 104 So.2d 827 (1958).
 

 “We have held that where an event occurs which renders a case moot prior to this court considering the appeal it will be dismissed because a decision is not necessary.
 
 Chisolm v. Crook,
 
 272 Ala. 192, 130 So.2d 191 (1961);
 
 Weathington v. City of Birmingham,
 
 293 Ala. 652, 309 So.2d 430 (1975).
 

 “In
 
 Weathington,
 
 quoting from
 
 Dawkins,
 
 this court said:
 

 “ ‘ . The function or duty of a judicial tribunal is to determine real controversies relative to the legal rights of persons or property, which are actually involved in the particular case ...” ... ’
 

 “This case does not present a situation where there is likelihood of repetition of the situation giving rise to this litigation: appointment of two members of the Commission from the same Congressional District. Neither does it appear that the requirements of § 311(4) will not be strictly adhered to in the future. The judgment of the trial court is quite clear on this point. Thus we do not have the factors militating against mootness that were present in
 
 Roe v. Wade,
 
 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 [(1973)]; and
 
 Super Tire Engineering Co. v. McCorkle,
 
 416 U.S. 115, ... 94 S.Ct. 1694, 40 L.Ed.2d 1 [(1974)].
 

 “A decision by this court in this case would accomplish nothing.”
 

 359 So.2d at 769.
 

 Similarly, in
 
 City of Mobile v. Scott, supra,
 
 when a challenged employment contract terminated before a decision on the merits could be issued, we held as follows:
 

 “Where the chief of police sought restoration to the office from which he allegedly had been wrongfully removed, this court dismissed his appeal where he had been legally removed from office after the appeal was taken.
 
 State ex rel. Case v. Lyons,
 
 143 Ala. 649, 39 So. 214 [(1905)]. The court there said:
 

 “ ‘... “The cause, in short, has become a moot case. There is no occasion qr necessity for a judgment here, and no end to be accomplished by any judgment we might render, and we therefore decline to consider the case as now presented on its original merits.,’ (143 Ala. at page 652, 39 So. at page 215)
 

 “Whatever may have been the situation when the instant suit was commenced or when the decree was rendered, the case is now moot, and, for that reason, the appeal is due to be and is dismissed.”
 

 278 Ala. at 390, 178 So.2d at 547.
 

 It is evident that the focal point of the plaintiffs’ complaint was the plaintiffs’ dissatisfaction with the circumstances giving rise to Bradley Byrne’s appointment as
 
 *130
 
 chancellor of Alabama’s two-year college system. Upon Byrne’s resignation as chancellor, the ultimate relief sought by the plaintiffs became a reality; therefore, there is now no justiciable controversy, and any declaration by the Court in this declaratory-judgment action would be meaningless. “This court will not render a purely advisory opinion nor decide moot questions under the guise of a declaratory judgment.”
 
 Homan v. Beard,
 
 268 Ala. 22, 23, 104 So.2d 914, 915 (1958) (citing
 
 Birmingham Trust Nat’l Bank v. Garth,
 
 263 Ala. 121, 81 So.2d 590 (1955)). Because the plaintiffs’ requests for relief became moot once Bytne resigned as chancellor, the declaratory-judgment count seeks, in effect, an advisory opinion defining the term “agenda” as that term is used in the Open Meetings Act.
 

 There is a well established exception to the mootness doctrine allowing courts to reach the ultimate issue even if it has become moot “where ‘a broad public interest is involved.’”
 
 Slawson v. Alabama Forestry Comm’n,
 
 631 So.2d 953, 957 (Ala.1994) (quoting
 
 Payne v. J.T.N.,
 
 568 So.2d 830, 831 (Ala.Civ.App.1990)).
 
 See also Chapman v. Gooden,
 
 974 So.2d at 989 (“It is true that an exception exists for a ‘moot case involving issues of great public importance, which may recur in the future.’ ” (quoting 1A C.J.S.
 
 Actions
 
 § 81 (2005))). Further, in
 
 Slawson,
 
 a case seeking to require the Alabama Forestry Commission to provide public notice of any specially held meeting, this Court specifically concluded: “We consider the public’s interest in receiving notice of public meetings to be a ‘broad public interest.’ ” It thus ultimately addressed the notice issue. 631 So.2d at 957. Despite that earlier holding, we now conclude, as we did in
 
 Chapman, supra,
 
 that the facts of the present case are clearly distinguishable from those in
 
 Slawson
 
 and do not require the application of the public-interest exception. This Court in
 
 Chapman
 
 distinguished
 
 Slawson
 
 as follows:
 

 “ ‘The criteria for applying the public interest exception to the mootness doctrine include the public nature of the question, the desirability of an authoritative determination for the purpose of guiding public officers,
 
 and
 
 the likelihood that the question will generally recur.’ [1A C.J.S.
 
 Actions
 
 § 81 (2005) ] (footnote omitted).
 
 However, this ‘exception is construed narrowly
 
 ...
 
 and a clear showing of each criterion is required to bring a case within its terms.’ In re Adoption of Walgreen,
 
 186 Ill.2d 362, 365, 238 Ill.Dec. 124, 710 N.E.2d 1226, 1227 (1999).
 

 “Although this case
 
 does
 
 involve a matter of public importance, the second and third factors in the analysis weigh
 
 against
 
 the application of the ‘public-interest’ exception. As we have already discussed, the conditions that gave rise to this action are unlikely to recur. Indeed, Nancy Worley, who was secretary of state when this action was filed, no longer serves as secretary of state_ Moreover, in view of the actions taken by the attorney general in this case, including the distribution of his March 18, 2005, opinion to the registrars throughout the State, as well as the action of the secretary of state herself, in revising the voter-registration forms, it is difficult to see how a judgment ... would further enlighten the secretary of state or the registrars in the performance of their duties.
 

 “These factors, although not expressly considered in
 
 Slawson,
 
 weighed in
 
 favor
 
 of the application of the exception in that case.
 
 Slawson
 
 involved an action by Bart Slawson and Naomi Furman against the Alabama Forestry Commission (‘the Commission’) and others, challenging the Commission’s financial ‘sup
 
 *131
 
 port of a private nonprofit organization known as Stewards of Family Farms, Ranches, and Forests (“Stewards”).’ 631 So.2d at 955. The action sought a judgment declaring, among other things, that the Commission had violated the Alabama Sunshine Law, Ala.Code 1975, § 13A-14-2, by failing to ‘provide the public with notice of a meeting it held by special session ... at which the Commission passed a resolution approving the use of Commission resources ... in promoting Stewards....’ 631 So.2d at 955. They also ‘sought to enjoin the [Commission] from,’ among other things, ‘meeting in secret, [and] from meeting without prior public notice.’
 
 Id.
 
 The trial court entered a summary judgment for the defendants. On appeal, the Commission contended that the notice issue was moot, because it had begun giving public notice of its meetings. 631 So.2d at 957. This Court, citing the public-interest exception,
 
 id.,
 
 proceeded to address the merits and reversed the summary judgment. 631 So.2d at 959.
 

 “Slawson
 
 involved two notable features that distinguish it from this case. First, and perhaps most significantly,
 
 the Commission was still arguing on appeal that the statute did not require that it provide notice.
 
 In particular, it sought to persuade this Court to ‘follow the Georgia Supreme Court, which [had] indicated that “[Georgia’s] Sunshine Law deals with the openness of public meetings, not with the notice of such meetings.”’ 631 So.2d at 958 (quoting
 
 Harms v. Adams,
 
 238 Ga. 186, 187, 232 S.E.2d 61, 62 (1977)). Thus, unlike this case, the
 
 dispositive issue
 
 in
 
 Slawson,
 
 namely, the correct construction and application of the Alabama Sunshine Law,
 
 remained controverted,
 
 even at the appellate stage. Here, by contrast, the dispositive issue, namely, the correct construction and application of § 177, [Ala. Const.1901,] has not been disputed by anyone since the intervention of the attorney general at the outset of the case.
 

 “Second, because of the continuing dispute in
 
 Slawson
 
 over the
 
 necessity
 
 of notice, there was a reasonable probability that the challenged conduct would recur, absent a final judicial determination. In fact, the Commission had reversed its position on the notice issue more than once. It had provided public notice of its meetings in the past, ‘but [had] discontinued that practice because the public did not attend.’ 631 So.2d at 957. By the time the case reached this Court, the Commission was again providing public notice.
 
 Id.
 
 However, by pressing its position in this Court that notice was not required,
 
 the Commission signaled its unwillingness to abandon its claim of the right to discontinue giving notice at any time. By contrast, no one in this case is insisting, expressly or by implication, on the right to revive the prior policy of disfranchisement without regard to the nature of the felony conviction.
 
 For these reasons,
 
 Slawson
 
 is not controlling.”
 

 Chapman,
 
 974 So.2d at 989-90 (some emphasis original; some emphasis added).
 

 Similarly, here, despite the plaintiffs’ attempt to couch their claims on appeal as concerning the Board’s notice practices, it is apparent to this Court that the plaintiffs’ .claims do not concern the Board’s notice practices, in general, but instead pertain to a single, specific notice and agenda, which, they say, was vague and overbroad and thus illegal under the Open Meetings Act. Although the plaintiffs do include in their brief to this Court some general criticism of the Board’s notices of previous meetings, it is clear that both the stated claims and the relief sought in the underlying complaint are specifically limit
 
 *132
 
 ed to the May 10, 2007, meeting notice and the Board’s actions during that meeting, more specifically, to Byrne’s appointment as chancellor. Because the dispositive issue in the present appeal deals with the contents of a specific notice and not the overall “necessity of notice,” we conclude that there has been no demonstration of a likelihood of repetition of the facts giving rise to the underlying litigation, and we discern no public interest in addressing the merits of the issue raised by the plaintiffs on appeal. Further, there is nothing indicating that the statutory notice requirements “will not be strictly adhered to in the future.”
 
 Eagerton,
 
 359 So.2d at 769. This appears especially plausible because, as noted by the plaintiffs, this is the first litigation challenging the sufficiency of the Board’s notice/agenda policy since the inception of the notice requirement on October 1, 2005. Moreover, any future determination as to the sufficiency of a specific notice and/or agenda posted by the Board would require examination of the language of that notice in light of the particular topics covered during the meeting as to which it gave notice; therefore, any inquiry in the present case “would require us to speculate on presently undeterminable circumstances.”
 
 Bruner,
 
 865 So.2d at 1176. “Matters that may or may not occur in the future are not matters in controversy.”
 
 Case v. Alabama State Bar,
 
 939 So.2d 881, 884 (Ala.2006).
 

 Here, any action by this Court on the merits would ultimately have no effect on the rights of the parties, because the plaintiffs have already, and inadvertently, obtained the relief to which they would have been entitled had they succeeded on their declaratory-judgment claims — Byrne is no longer chancellor of Alabama’s two-year college system. Accordingly, based on the allegations contained in the plaintiffs’ complaint, “[a] decision by us in this case would accomplish nothing”; therefore, we conclude that the case before us is moot and that the appeal is due to be dismissed.
 
 Eagerton, supra.
 

 APPEAL DISMISSED.
 

 COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
 

 [1]
 

 . This case was originally assigned to another Justice on this Court. It was reassigned to Justice Shaw.
 

 [2]
 

 . Specifically, the plaintiffs allege that the notice violated § 36-25A-3(c), Ala.Code 1975, which provides:
 

 “Posted notice pursuant to this section shall include the time, date, and place of meeting. If a preliminary agenda is created, it shall be posted as soon as practicable in the same location or manner as the notice given pursuant to this section. A governmental body may discuss at a meeting additional matters not included in the preliminary agenda. If a preliminary agenda is not available, the posted notice shall include a general description of -the nature and purpose of the meeting.”
 

 [3]
 

 . Because of our disposition of this appeal, we do not address the additional issues or arguments identified by the parties in their briefs to this Court.
 

 [4]
 

 . As noted
 
 infra,
 
 Bradley Byrne resigned as chancellor of Alabama's two-year college system in May 2009.
 

 [5]
 

 . Section 36-25A-9(f), Ala.Code 1975, provides, in pertinent part:
 

 "The court may invalidate the action or actions taken during a meeting held in violation of this chapter, provided that the complaint is filed within 21 days of the date when the action is made public, the violation was not the result of mistake, inadvertence, or excusable neglect, and. invalidation of the governmental action taken would not unduly prejudice third parties who have changed their position or taken action in good faith reliance upon the challenged action of the governmental body....”