MURDOCK, Justice.
The State Director of Finance, Marquita Davis (“the finance director”),[1] and the State Comptroller, Thomas L. White, Jr. (“the comptroller”),[2] appeal from a prelim *739 inary injunction entered by the Montgomery Circuit Court in response to a declaratory-judgment action brought by the Alabama Education Association (“the AEA”); Alabama Voice of Teachers for Education, a political-action committee affiliated with the AEA (“A-VOTE”); the Alabama State Employees Association (“the ASEA”); and the State Employees Association Political Action Committee, a political-action committee affiliated with the ASEA (“SEA-PAC”). We vacate the injunction and remand the case for the circuit court to dismiss the action.

I. Statement of Facts

Employees of the State of Alabama are paid through the office of the comptroller. Subject to certain conditions, § 36-1-4.8, Ala.Code 1975, provides that the comptroller may make deductions from the salary of a State employee upon the employee’s request. Specifically, § 36-l-4.3(a), Ala. Code 1975, provides:
“The state Comptroller shall adopt statewide policies which provide for deductions from the salaries of state employees or groups of state employees whenever a request is presented to the state Comptroller by a group of participating state employees equal in number to at least 200 provided, however, that deductions being made as of April 23, 1985, shall continue to be made. The deductions shall be made at least monthly and shall be remitted to the appropriate company, association, or organization as specified by the employees. The deductions may be made for membership dues, and voluntary contributions, and insurance premiums. Any deduction provided under the provisions of this section may be terminated upon two months’ notice in writing by a state employee to the appropriate company, association, or organization and to the appropriate payroll clerk or other appropriate officials as specified by the state Comptroller.”
Section 36-1^1.4, Ala.Code 1975, prescribes other procedures relating to the salary deductions authorized in § 36-1-4.3:
“The policies adopted by the state Comptroller for deductions from the salaries of state employees or groups of state employees for employee organizations shall provide that the deductions for membership dues and voluntary contributions shall be made based on membership lists and forms provided by the employees’ organization. Such lists are to be corrected and revised annually according to procedures to be established by the state Comptroller. Membership dues and voluntary contributions currently authorized shall continue on an annual basis for the current yearly period and for each succeeding yearly period unless the employee revokes the deduction in writing within 10 days of the next succeeding yearly period. Voluntary contributions may be revoked by giving a 30-day notice in- writing. New authorizations shall be permitted on a monthly basis according to procedures to be established by the state Comptroller. Upon leaving state service whether by death, retirement, termination, resignation, leave of absence or other means, payroll deduction of dues and authorized voluntary deductions shall cease. When an employee returns to state service from an approved leave of absence or other temporary leave, payroll deductions and voluntary contributions shall resume unless the employee revokes the deductions in writing. When amounts have been correctly deducted and remitted by the state Comptroller, the state Comptroller shall bear no further responsibility or liability for subsequent transactions.”
*740 On July 1, 2010, the comptroller implemented a new policy regarding salary deductions. Under this new policy, the comptroller stopped executing salary deductions designated for contributions to SEA-PAC; the comptroller continued making deductions designated for the payment of dues to the ASEA. Likewise, the comptroller stopped executing salary deductions to a political-action committee affiliated with the Alabama State Troopers Association. Portions of an employee’s salary no longer deducted as a result of this policy change were included in the employee’s paychecks.
The comptroller’s change in the manner of executing salary deductions caused the AEA to inquire of the comptroller whether a similar policy change in deductions would be made as to the salaries of State employees who elected to have contributions deducted for the benefit of the AEA. In conjunction -with this inquiry, the comptroller was made aware that a portion of the deductions then being made for the benefit of the AEA were in turn contributed by the AEA to A-VOTE. Because the comptroller could not ascertain what portion of the deductions-designated for the AEA were passed on to A-VOTE,. the comptroller ceased executing all salary deductions designated for the AEA on September 1, 2010.
The comptroller based the aforesaid changes in the manner of executing salary deductions on his interpretation of the provisions in §§ 36-12-61 and 17-17-5, Ala. Code 1975. Section 36-12-61, Ala.Code 1975, provides:
“It shall be unlawful for any officer or employee of the State of Alabama to use or to permit to be used any state-owned property of any character or description, including stationery, stamps, office equipment, office supplies, automobiles or any other property used by him, in his custody or under his control for the promotion or advancement of the interest of any candidate for the nomination or election to any public office of the State of Alabama.”
As then codified, § 17-17-5, Ala.Code 1975, provided in part that “[n]o person in the employment of the State of Alabama ... shall use any state ... funds, property, or time, for any political activities.”[3]
On September 10, 2010, the AEA and A-VOTE filed a complaint against the finance director and the comptroller in the Montgomery Circuit Court seeking a judgment declaring that deductions designated for the AEA that benefited A-VOTE were not prohibited by law and seeking a permanent injunction to force the comptroller to resume the previous practice of executing salary deductions designated for the AEA. Simultaneously, the AEA and A-VOTE filed a motion for a preliminary injunction or restraining order. On September 13, 2010, the ASEA and SEA-PAC filed a motion to intervene as plaintiffs in the action. The circuit court set a hearing on the motion for a preliminary injunction for the following day.
On September 14, 2010, before the hearing, the finance director and the comptroller filed a motion to dismiss the action for lack of subject-matter jurisdiction. At the outset of the hearing, counsel for the finance director and the comptroller explained that the AEA had informed the comptroller what portion of requested salary deductions reflected amounts to be forwarded to A-VOTE as contributions. Counsel for the finance director and the comptroller stated that, based on that newly received information, the comptroller *741 would resume (and he subsequently did resume) as of October 1, 2010, salary deductions for the AEA in an amount that excluded the portion of those deductions that otherwise would be passed on to A-VOTE.
During the September 14 hearing, counsel for the plaintiffs argued at length concerning the meaning of the above-described statutes. The finance director and the comptroller called a witness to testify on their behalf. The plaintiffs submitted two affidavits from the executive director of the AEA, Paul Hubbert. Among other things, Hubbert testified that, after § 36-l-^4.3 was enacted in 1985, the comptroller received authorization from State employees for salary deductions for dues and contributions to A-VOTE and remitted the amounts collected pursuant to those authorizations to the AEA consistently from that time until the comptroller stopped executing the deductions in September 2010. Following the hearing, the circuit court denied the finance director and the comptroller’s motion to dismiss the action; it granted the motion to intervene filed by the ASEA and SEA-PAC.
On September 15, 2010, the ASEA and SEA-PAC filed their complaint in intervention in which they, like the AEA and A-VOTE, requested a judgment declaring the deductions for SEA-PAC legal and injunctive relief from the comptroller’s change in the manner of executing State employees’ salary deductions for SEA-PAC. On the same date, the circuit court entered a preliminary injunction requiring that the finance director and the comptroller
“a) shall in all future pay periods, honor all employee requests for payroll deductions pertaining to, or involving, AEA or A-VOTE, and ASEA or SEA-PAC, just as if Defendants’ recent change in that regard had never been made; and
“b) refrain from taking any action of any sort that would impair, or interfere with the honoring of, payroll deduction pursuant to employee requests, involving AEA, A-VOTE, ASEA, or SEA-PAC.”
The circuit court ruled that, without the preliminary injunction, the plaintiffs would suffer irreparable harm through the actions of the finance director and the comptroller because “the Plaintiffs will not be receiving the funds that their members have sought to have deducted and forwarded to the Plaintiffs. This will, furthermore, irreparably diminish Plaintiff A-VOTE’s, and Intervening Plaintiff SEA-PAC’s, ability to pursue their lawful goals in the near future.” The circuit court cited the doctrine of sovereign immunity, which it stated would prohibit monetary recovery by the plaintiffs, and the fact that it was then an election year as further evidence of the irreparable nature of the harm.
The circuit court concluded that the plaintiffs had demonstrated a likelihood of success on the merits through
“the strength of Plaintiffs’ arguments on the proper interpretation of Ala.Code [1975,] §§ 36-1-4.3, 36-1-4.4, and 36-12-61. There is substantial history at the administrative level of interpreting the phrase ‘voluntary contributions,’ in §§ 36-1-4.3 and -4.4, to include contributions to political action committees affiliated with employee organizations. This has been the Comptroller’s own interpretation for many years. This longstanding interpretation is persuasive evidence of the meaning of the statutes. Furthermore, the Court recognizes the strength of the argument that § 36-12-61 would not prohibit the payroll deduction of [political-action-committee] contributions even if that statute were standing alone. The Court notes the purpose of that Article of the Alabama *742 Code as set forth in Ala.Code [1975,] § 36-12-60, and recognizes the strength of the argument that the longstanding administrative practice of payroll deduction was and will be consistent with that legislative purpose. The Court further recognizes the strength of the argument that Ala.Code [1975,] §§ 36-1-4.3 and - 4.4 (along with a similar statute at the local level), which have long been administratively interpreted as covering payroll deductions for voluntary PAC contributions, would govern if there were actually a conflict between those statutes and § 36-12-61.”
The following day the finance director and the comptroller filed a notice of appeal of the circuit court’s preliminary injunction. The finance director and the comptroller also filed in the circuit court a motion to stay the preliminary injunction pending resolution of the appeal. In support of the motion, the finance director and the comptroller filed an affidavit from the comptroller describing the attending risks of revising payroll data for employee contributions at the end of the fiscal year because it would require a substantial amount of other data adjustments. On September 17, 2010, the circuit court denied the motion to stay.
The finance director and the comptroller renewed in this Court their motion for a stay of the preliminary injunction pending the resolution of the appeal. They also requested immediate relief from the preliminary injunction to prevent the risk of interference with the completion of fiscal-year-end tasks. The finance director and the comptroller also moved for a stay of all proceedings in the circuit court and requested expedited review of the appeal. The following day, the plaintiffs filed responses to the finance director and the comptroller’s motions. On September 24, 2010, through a supplemental filing, the finance director and the comptroller informed this Court that the October 1, 2010, payroll for applicable State employees would include salary deductions for A-VOTE and SEA-PAC in compliance with the preliminary injunction but that such compliance did not constitute an abandonment of the appeal.
On October 15, 2010, this Court granted in part and denied in part the finance director and the comptroller’s motion to stay the preliminary injunction. This Court stayed that portion of the circuit court’s order that “requir[ed] the Comptroller to deduct contributions to a political action committee pursuant to an employee’s request for such payment.” This Court denied a stay of that portion of the circuit court’s order that “required] the Comptroller to deduct dues of the AEA and the ASEA pursuant to an employee’s request.”
Subsequently, in a special session, the legislature enacted, and the governor signed into law on December 20, 2010, Act No. 2010-761, Ala. Acts 2010 (“the Act”). The Act amended § 17-17-5, Ala.Code 1975, to explicitly state as follows:
“(a) No person in the employment of the State of Alabama ... shall use any state, county, city, local school board, or other governmental agency funds, property, or time, for any political activities.
“(b) No person in the employment of the State of Alabama ... may arrange by salary deduction or otherwise for any payments to a political action committee or arrange by salary deduction or otherwise for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for political activity....
[[Image here]]
“Any organization that requests the State of Alabama, a county, a city, a local school board, or any other governmental agency to arrange by salary deduction or otherwise for the collection of *743 membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall certify to the appropriate governmental entity that none of the membership dues will be used for political activity. Thereafter, at the conclusion of each calendar year, each organization that has arranged for the collection of its membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall provide the appropriate governmental entity a detailed breakdown of the expenditure of the membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency collected by the governmental entity. ...”
The Act became effective on March 20, 2011. Act No. 2010-761, § 4.[4]
Following the legislature’s amendment of § 17-17-5, the AEA and A-VOTE filed with this Court a motion to vacate the preliminary injunction that had been entered by the circuit court and to remand this case to the circuit court to allow the AEA and A-VOTE an opportunity to file with that court a motion to dismiss the action without prejudice. In their motion, the AEA and A-VOTE argued that “the landscape of the dispute between the parties has changed substantially” with the passage of the Act and that there were “potential issues of mootness, as well as many other potential issues that could arise” from the passage of the Act. The AEA and A-VOTE stated that, as a result of the passage of the Act, they “no longer wish[ed] to pursue this civil action.” They argued that this Court’s vacating the circuit court’s preliminary injunction and remanding the action so that the plaintiffs could file a motion to dismiss the action without prejudice would “keep the Court and the parties from having to address potentially complex and disputed arguments about [the Act] at this time.” On December 27, 2010, the ASEA and SEA-PAC filed with this Court a joinder in the December 28, 2010, motion of the AEA and A-VOTE. On January 10, 2011, the finance director and the comptroller filed a written opposition to the plaintiffs’ motion in which, among other things, they rejected the suggestion that the order of the circuit court should be vacated and the case remanded based on the “potential issues of mootness” argument made by the plaintiffs.
On March 8, 2011, the finance director and the comptroller notified this Court that on February 25, 2011, the plaintiffs had filed in the United States District Court for the Northern District of Alabama an action against the governor, the finance director, the comptroller, and other defendants (“the federal-court defendants”) [5] challenging the constitutionality of the Act under the First and Fourteenth Amendments to the United States Constitution. Specifically, the complaint alleged that the Act’s ban on salary deductions in support of political activities is “overbroad” and vague, that enforcement of the Act would result in “viewpoint” discrimination, and that the Act violates the Equal Protection Clause of the Fourteenth Amendment. Subsequent filings in this Court by the finance director and *744 the comptroller notified this Court that the federal district court on March 18, 2011, entered a preliminary injunction against the federal-court defendants that “enjoined and restrained [them] from implementing or enforcing [the Act].” The federal district court’s injunctive order further stated that “[a]ll defendants named above must honor employee requests for payroll deductions to the Alabama Education Association (AEA’), and must remit the deducted amounts (including amounts representing contributions to A-VOTE’) to AEA.” The federal-court defendants filed a notice of appeal of the preliminary injunction, as well as a motion to stay the injunction, to the United States Court of Appeals for the Eleventh Circuit.
On April 5, 2011, the Eleventh Circuit Court of Appeals entered an order denying the motion to stay the federal district court’s preliminary injunction insofar as it prohibited the implementation of the Act. The Eleventh Circuit granted a stay, however, of the portion of the preliminary injunction that required the federal-court defendants to honor employee requests for salary deductions designated for the AEA that represented contributions to A-VOTE. The Eleventh Circuit noted that, before the enactment of the Act, the comptroller, based on preexisting Alabama law, already had ceased executing salary deductions from applicable State employees’ paychecks that represented contributions to political-action committees. In particular, the Eleventh Circuit noted:
“If, as the district court has preliminarily concluded, the new Act is unconstitutional and its provisions are nonsev-erable, the provisions of the Alabama Code on which the Comptroller’s June 28, 2010 policy was based are unaffected by the new Act. There is nothing in the district court’s memorandum opinion, or in the law of which we are aware, to justify a federal court injunction preventing the [federal-court] defendants from refusing to deduct for, or remit to, any organization amounts representing contributions to A-VOTE or any other [political-action committee], based on their interpretation of pre-Act 2010-761 state law. To the contrary, Ysursa v. Pocatello Educ. Ass’n, 555 U.S. 853, 129 S.Ct. 1093 (2009), clearly permits the defendants to refuse to collect and remit PAC contributions.”[6]
Thus, the Eleventh Circuit upheld the federal district court’s preliminary injunction of the implementation of the Act, except that it stayed the injunction
“insofar as the preliminary injunction: 1) requires any defendant to honor employee requests for payroll deductions for contributions to A-VOTE or to any other [political-action committee]; 2) requires any defendant to remit or pay over any PAC payroll deductions to any entity or person other than the employees from whose pay they were deducted; and 3) prevents any defendant from remitting or refunding any PAC payroll deduction to the employee from whose pay it has been deducted.”
On December 27, 2011, the Eleventh Circuit Court of Appeals filed with this Court certified questions pertaining to the Act in relation to the constitutional challenge filed by the AEA and A-VOTE, which query has been docketed as case no. 1110413.[7] Those questions concern the interpretation of the Act and specifically ask:
*745 “1. Is the ‘or otherwise’ language in [the Act] limited to the use of state mechanisms to support political organizations, regardless of the source?
“2. Does the term ‘political activity’ refer only to electioneering activities?”
On January 25, 2012, the finance director and the comptroller filed a motion to consolidate this case with case no. 1110418 on the ground that “the facial validity of [the Act is] at stake in both cases, there is likely substantial overlap between the issues raised by AEA’s submission of [the Act] to this Court in No. 1091745 and the questions due to be considered in No. 1110413.”
On February 1, 2012, the AEA and A-VOTE filed a response in opposition to the motion to consolidate in which they asserted that the constitutional claims made in the federal action concern only the new Act. Thus, argue the AEA and A-VOTE, those claims and the federal action “are entirely distinct from the question at issue in this appeal, which concerns the proper interpretation of § 17-17-5 as it existed before [the Act] became law.” (Emphasis added.)[8]
Also on January 25, 2012, the finance director and the comptroller filed what they styled a “Renewed Motion for Stay” of the preliminary injunction in which they requested that, based upon the Act, this Court expand the stay it had issued on October 15, 2010. The motion characterized the previous stay granted by this Court as one permitting the comptroller to refuse salary deductions that were directly contributed to political-action committees. The finance director and the comptroller assert that the comptroller also may refuse salary deductions designated for dues to organizations that contribute a portion of the deducted moneys to political-action committees associated with those organizations. On February 1, 2012, the AEA and A-VOTE filed a response in opposition to the renewed motion for a stay.

II. Standard of Review

As to questions of fact, the ore tenus rule is applicable in preliminary-injunction proceedings. See Water Works & Sewer Bd. of Birmingham v. Inland Lake Invs., LLC, 31 So.3d 686, 689-90 (Ala.2009). As this Court noted in Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala.2008), however,
“[t]o the extent that the trial court’s issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review an injunction solely to determine whether the trial court exceeded its discretion should not apply. We find the rule applied by the United States Supreme Court in similar situations to be persuasive: ‘We review the District Court’s legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion.’ Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. *746 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017(2006)....”
(Emphasis omitted.)

III. Analysis

As noted, we have before us a motion from the plaintiffs to vacate the circuit court’s preliminary injunction and to remand the case to provide the plaintiffs an opportunity to file a motion requesting the circuit court to dismiss the action without prejudice. When the plaintiffs filed this motion, their action was not moot. Although the legislature had enacted the Act and it had been signed by the governor, it was not immediately effective. Perhaps recognizing that their claims based on the meaning of Alabama’s previous statutory scheme were not moot at the time they filed their motion, the plaintiffs’ motion stated, in pertinent part:
“Before [the] Act, th[is] ease primarily involved the interpretation of statutes that had been enacted and codified years before the trial court’s ruling. Now, by virtue of this new legislative action, the scope and nature of the issues potentially implicated in a dispute about payroll deductions for these parties has changed. There are potential issues of mootness, as well as many other potential issues that could arise.... Because of this change in circumstance, AEA and A-VOTE no longer wish to pursue this civil action.”
(Emphasis added.)
Among other things, the finance director and the comptroller cite this Court’s decisions in Barber v. Cornerstone Community Outreach, Inc., 42 So.3d 65, 77-78 (Ala.2009), and Chapman v. Gooden, 974 So.2d 972, 989 (Ala.2007), and oppose the plaintiffs’ motion on the ground that allowing a party who prevailed in the trial court to render an appeal moot simply by expressing a desire to no longer pursue an action raises the specter of manipulation of the court process. In Cornerstone, this Court stated:
“We also consider whether the appeals of the preliminary injunction are or could be made moot if this Court were to remand the case in order to allow for a rescission by the trial court of the preliminary injunction. At bottom, what would then be at issue would not be an agreement by [the plaintiffs] to relinquish their right to engage in any particular conduct, but rather an acquiescence by [the plaintiffs] in having the trial court rescind an order favoring them. We are aware of no cases in which a willingness by a prevailing party in the trial court to have the case returned to the trial court for purposes of the rescission of the order favoring it moots the proceeding in the appellate court.
[[Image here]]
“We decline to hold that the apparent willingness of a prevailing litigant in the court below to have an appeal to this Court dismissed and the case remanded for the purpose of allowing the lower court to rescind the judgment in its favor deprives this Court of any discretion to decide the matter pending before us.”
Cornerstone, 42 So.3d at 72-74.
We do not find it necessary at this juncture to further consider the plaintiffs’ motion to dismiss or the application of our holding in Cornerstone to this case. As noted, the plaintiffs’ claims in this case are based on Alabama’s statutory scheme as it existed before the effective date of the Act and, in particular, seek judicial approval of their interpretation of that statutory scheme. The Act, however, became effective on March 20, 2011, and by its terms now clearly prohibits the comptroller from executing salary deductions that contribute directly or indirectly to political-action committees. No claims are made in the present lawsuit seeking the return of any *747 moneys the comptroller has refused to deduct in the past, and the Act now plainly forecloses the prospective declaratory and injunctive relief specifically requested by the plaintiffs in this case. By definition, therefore, this action is moot.
Whether former § 17-17-5 prohibited salary deductions for contributions to political-action committees is an abstract question, because the former statute is no longer effective law. As this Court stated in Underwood v. Alabama State Board of Education, 39 So.3d 120, 129 (Ala.2009), “ ‘[a] case is moot when there is no real controversy and it seeks to determine an abstract question which does not rest on existing facts or rights’ ” (quoting State ex rel. Eagerton v. Corwin, 359 So.2d 767, 769 (Ala.1977) (emphasis omitted)). See also, e.g., King v. Campbell, 988 So.2d 969, 976 (Ala.2007) (“ ‘We have held that if an event happening after hearing and decree in circuit court, but before appeal is taken, or pending appeal, makes determination of the appeal unnecessary or renders it clearly impossible for the appellate court to grant effectual relief, the appeal will be dismissed.’ ” (quoting Morrison v. Mullins, 275 Ala. 258, 259, 154 So.2d 16, 18 (1963))).
The finance director and the comptroller also make certain arguments concerning the circuit court’s jurisdiction over this action and contend that we should address those various arguments before reaching the issue of mootness.[9] This argument ignores the fact that whether an action is moot is also a matter of jurisdiction. See, e.g., Underwood, 39 So.3d at 127 (“ ‘ “A moot case lacks justici-ability.” Crawford [v. State, 153 S.W.3d 497, 501 (Tex.App.2004) ]. Thus, “[a]n action that originally was based upon a justi-ciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events.” Case [v. Alabama State Bar, 939 So.2d 881, 884 (Ala.2006) ].’” (quoting Chapman v. Gooden, 974 So.2d 972, 983-84 (Ala.2007)) (emphasis omitted)). After carefully considering the other arguments raised by the finance director and the comptroller, we conclude that to address those arguments at this juncture would involve the Court in answering questions unnecessary to the disposition of the appeal.
“ ‘The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.’ ”
King v. Campbell, 988 So.2d at 976 (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)).[10]
*748 We also find unpersuasive the finance director and the comptroller’s argument that we should request the relative positions of the parties as to the meaning of the Act before deciding the effect of the Act on this action. There is no need to determine the precise reach of the Act at this juncture. The action before us is one that challenges the practices adopted by the finance director and the comptroller based on their interpretation of Alabama statutory law as it existed before the Act became effective. It is enough for present purposes to know that the Act explicitly states a rule that encompasses those practices. Unavoidably, therefore, the action before us must be considered moot.
Similarly, the fact that the constitutionality of the Act has been challenged by the AEA and A-VOTE in federal court does not alter our holding today. The possibility that the Act will be declared unconstitutional at some time in the future is merely that — a possibility. The constitutionality of the Act is not a question that has been presented to us in the present case. To act on such a possibility would require speculation on our part, in conflict with the general principle that “acts of the legislature are presumed constitutional.” State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006).
Because this action is moot as a result of a change in the law, it follows that the basis for the circuit court’s preliminary injunction no longer exists.
‘“Where the grounds and reasons for which the injunction was granted no longer exist, by reason of changed conditions, it may be necessary to alter the decree to adapt it to such changed conditions, or to set it aside altogether, as where there is a change in the controlling facts on which the injunction rests, or where the applicable law, common or statutory, has in the meantime been changed, modified, or extended. Such change in the law does not deprive the complainant of any vested right in the injunction, because no such vested right exists.’ ”
Wilkinson v. State ex rel. Morgan, 396 So.2d 86, 89 (Ala.1981) (quoting 42 Am. Jur.2d Injunctions § 334 (1969)). Therefore, the injunction is due to be vacated.

IV. Conclusion

The claims presented by the plaintiffs in their action seeking declaratory and in-junctive relief are now moot. Therefore, we vacate the circuit court’s preliminary-injunction order and remand the case for the circuit court to dismiss the action.
ORDER VACATED AND CASE REMANDED WITH INSTRUCTIONS.
WOODALL, STUART, PARKER, and WISE, JJ., concur.
MALONE, C.J., recuses himself.

. When this action was filed, Bill Newton was the acting State Director of Finance and was the named defendant. Davis was automatically substituted as a defendant when she became State Director of Finance. See Rule 25(d), Ala. R. Civ. P. We have restyled the appeal accordingly.

. The office of the comptroller is within the Department of Finance.

. As discussed infra, § 17-17-5 was amended effective March 20, 2011, by Act No. 2010-761, Ala. Acts 2010.

. Section 4 of the Act provides that the Act becomes effective 90 days following its passage and approval by the governor.

. The other named federal-court defendants are then State Superintendent of Education Joseph Morton, then Chancellor of Post-Secondary Education Freída Hill, Madison County District Attorney Robert Broussard, Lee County District Attorney Robert T. Treese III, the Huntsville City Board of Education, the City of Madison Board of Education, and the Madison County Board of Education.

. In Ysursa, the United States Supreme Court concluded that "nothing in the First Amendment prevents a State from determining that its political subdivisions may not provide payroll deductions for political activities." 555 U.S. 353, 355, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009).

. In its submission of certified questions, the Eleventh Circuit also further limited the fed *745 eral district court's preliminary injunction by permitting the State to enforce the Act to the extent that it restricts "payroll deductions for organizations engaged in electioneering activities” because such a restriction "likely would be found constitutional under Ysursa [v. Poca-tello Educ. Ass’n, 555 U.S. 353 (2009)].”

. Given our resolution of this appeal, we see no reason to grant the finance director and the comptroller's motion to consolidate this appeal with case no. 1110413. The Act was not the basis of the plaintiffs' action in this case, and its validity is not before us in this appeal. The certified questions submitted to this Court by the United States Court of Appeals for the Eleventh Circuit in case no. 1110413 have no bearing on the issues presented to us in this case. Therefore, by separate order issued in conjunction with this opinion, we are denying the finance director and the comptroller’s motion to consolidate the two appeals.

. The finance director and the comptroller contend that the plaintiffs have suffered no cognizable injury, that deductions for the AEA or A-VOTE have been requested by fewer than the 200 employees specified in § 36 — 1— 4.3(a), and that the plaintiffs' claims are barred by Art. I, § 14, Ala. Const. 1901.

. We note that
"[tjhere is a well established exception to the mootness doctrine allowing courts to reach the ultimate issue even if it has become moot 'where “a broad public interest is involved.” ' Slawson v. Alabama Forestry Comm'n, 631 So.2d 953, 957 (Ala.1994) (quoting Payne v. J.T.N., 568 So.2d 830, 831 (Ala.Civ.App.1990))....
" 1 "The criteria for applying the public interest exception to the mootness doctrine include the public nature of the question, the desirability of an authoritative determination for the purpose of guiding public officers, and the likelihood that the question will generally recur.” [1A C.J.S. Actions § 81 (2005)] (footnote omitted). However, this "exception is construed narrowly ... and a clear showing of each criterion is required to bring a case within its terms.” In re Adoption *748 of Walgreen, 186 Ill.2d 362, 365, 238 Ill.Dec. 124, 710 N.E.2d 1226, 1227 (1999).’ ”
Underwood, 39 So.3d at 130 (quoting Chapman v. Gooden, 974 So.2d 972, 989 (Ala.2007) (emphasis omitted)). Although the issue of what salary deductions are legally permissible may well be a question of public interest, an authoritative resolution of that question in relation to the previous statutory scheme governing such deductions would offer no guidance to public officials on how to act in the future. Also, with the enactment of the Act and the superseding of former § 17-17-5, we cannot conclude that that question is likely to recur. We see no basis, in other words, for expending judicial resources on an examination of the questions raised in the complaint based on the public-interest exception to the mootness doctrine.